Case No. 23-1679

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| TINKA VASSILEVA, | ) |
| | ) |
|    **Plaintiff-Appellant,** | ) |
| | ) |
| **-vs-** | ) |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
|    **Defendant-Appellee.** | ) |

---

**Appeal from the United States District Court**
**For the Northern District of Illinois**

**Case No. 1:19-cv-04064**

**United States District Court Judge**
**Hon. Franklin U. Valderrama, Judge Presiding**

---

**BRIEF FOR APPELLANT**

Deidre Baumann, Baumann & Shuldiner
Counsel for Appellant
77 W. Wacker, Suite 4500
Chicago, Illinois 60601
baumannesq@gmail.com
(312) 558-3119

## <u>Corporate Disclosure Statement</u>

The undersigned, counsel of record for TINKA VASSILEVA, Plaintiff-Appellant, furnishes the following information in accordance with Circuit Rule 26.1:

The Appellant's name is Tinka Vassileva.  She is a resident of Cook County, citizen of the United States and citizen of the State of Illinois.

Tinka Vassileva is a natural person and not a corporation.

Appellant was represented in the trial court by Deidre Baumann of Baumann & Shuldiner, 77 W. Wacker, Suite 4500, Chicago, IL 60601.  Ms. Baumann represents Appellant before this Court.


Respectfully submitted,


/s/ Deidre Baumann
_____

## Table of Contents

Corporate Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2-5

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5-6

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6-7

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     8-32

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     33

## Table of Authorities

*Alexander v. Wisconsin Dept. of Health & Family Serv.*, 263 F.3d 673 (7th Cir. 2001) . . . . . . 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252 (1977) . . . . . . . . . . . . . . . . 10

*Boss v. Castro*, 816 F.3d 910 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595 (7th Cir. 2011) . . . . . . . . .16

*Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . .31

*Feliberty v. Kemper Corp.*, 98 F.3d 274 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Furnco Const. Corp. v. Waters*, 438 U.S. 567 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . .30-31

*Gerhartz v. Richert*, 779 F.3d 682 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749 (7th Cir. 1996) . . . . . . . . . 8

*Hashan v. California St. Bd. Equalization*, 200 F.3d 1035 (7th Cir. 2000) . . . . . . . . . . . . 24-25

*Haywood v. Lucent Techs., Inc.*, 323 F.3d 524 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Herman v. Chicago*, 870 F.2d 400 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593 (7th Cir. 2015) . . . . . . . . . . . . 8-9

*Johnson v. Gudmundsson*, 35 F.3d 1104 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Jones v. Res-Care, Inc.*, 613 F.3d 665 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Keeton v. Morningstar, Inc.*, 667 F.3d 877 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lalvani v. Cook County*, 269 F.3d 785 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*Lang v. Ill. Dep't of Children and Family Servs.*, 361 F.3d 416 (7th Cir. 2004) . . . . . . . . . . . 32

*Little v. U.S.*, 489 F. Supp. 1012 (C.D. Ill. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Logan v. Commercial Union Ins. Co.,* 96 F.3d 971 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . .8

*Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465 (7th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . 30

*Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588 (7th Cir. 1991) . . . . . . . . . . . . . 8

*McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . 17

*McGreal v. Ostrov*, 368 F.3d 657 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Metzger v. Illinois State Police*, 519 F.3d 677 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 30-31

*Munson v. Friske*, 754 F.2d 683 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*O'Leary v. Accretive Health, Inc.*, 657 F.3d 625 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ortiz v. Werner Enter., Inc.*, 834 F.3d 60 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Outlaw v. Newkirk,* 259 F.3d 833 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 17

*Poullard v. McDonald*, 829 F.3d 844 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Powers v. Dole*, 782 F.2d 689 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180 (8th Cir. 1976),
cert. denied, 429 U.S. 1040 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Reales v. Consolidated Rail Corp.*, 84 F.3d 993 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 9

*Rogers v. City of Chicago*, 320 F.3d 748 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708 (7th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . .7

*Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir. 2002) . . . . . . . . . . . . . . 31

*Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 10

*Sweatt v. Union Pacific R. Co.*, 796 F.3d 701 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000 (7th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . .17

*Tobey v. Extel/JWP, Inc.*, 985 2d 330 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . 31

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Vassileva v. City of Chicago*, 2019 WL 5085717 (N.D. Ill. Oct. 10, 2019) . . . . . . . . . . . . . . . .23

*Wienco v. Katahn Associates, Inc.*, 965 F.2d 565 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 9

*Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672 (7th Cir. 2003) . . . . . . . . . . . . 16-18

*Zook v. Brown*, 748 F.2d 1161 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) *et seq.* . . . . . . . . . .Passim

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") . . . . . . Passim

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Passim

10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane,

Fed. Practice & Proc. § 2720, 332–34 (3d ed.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

### Jurisdictional Statement

The district court had jurisdiction over the subject matter of this case under 28 U.S.C.

§ 1331 and 28 U.S.C. §1343 because this action arises under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq*. and the Age Discrimination in Employment Act (ADEA),

29 U.S.C. § 623(a) *et seq*.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the

Appellant seeks review and reversal of a final order entered on March 14, 2023.  Appendix

(hereinafter "Appx.") 1. Appellant seeks review of all aspects of the final judgment. No

post-trial motions were filed, and a Notice of Appeal was timely filed on April 6, 2023.

Appx. 2.

### Statement of Issues

I.    **Whether the Defendant is Entitled to Summary Judgment,
      as a Matter of Law, on Plaintiff's Discrimination Claims?** . . . . . . . . . . . . . . . . .  8-10

      A.    **Whether Vassileva Was a Qualified Applicant for the FE V
            Position in 2018?** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-15

      B.    **Whether Vassileva Set Forth Enough Facts to Create an
            Inference of Pretext?** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-22

      C.    **Whether the Trial Court Erred in Failing to Consider Past
            Discriminatory Remarks Made by Defendant and Other Acts
            of Past Mistreatment as They Are Relevant to the Defendant's
            State of Mind and Support an Inference of Pretext in the
            Present Case?** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

      D.    **Whether the Trial Court Erred in Failing to Consider the
            City's Historical Treatment of Plaintiff as Compared to
            Her Similarly Situated Colleagues as it is Supports an
            Inference of Pretext in the Present Case?** . . . . . . . . . . . . . . . . . . . . . . . . .24-25

      E.    **Whether the Trial Court Erred When it Failed to Consider**

**Plaintiff's Claims Regarding the 2019 FE IV Promotion?** . . . . . . . . . . . . 25-27

F.    **Whether the Trial Court Erred When it Failed to Consider Vassileva's Claims Regarding Denial of FE III Acting Up Opportunities from March 2018 Through January 2019, Denial of FE III Overtime from March 2018 Through the Present, and a Written Reprimand on June 6, 2018?** . . . . 27-30

II.    **Whether the Defendant is Entitled to Summary Judgment, as a Matter of Law, on Plaintiff's Retaliation Claim?** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-32

## Statement of the Case

Tinka Vassileva, a Filtration Engineer for the City of Chicago, Department of Water Management since 2001, alleges violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) *et seq.*; national origin and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") ; and retaliation for filing administrative charges and *Vassileva I*[1] under Title VII. Appx. 1 at pp. 1. Vassileva is a 56-year-old woman from Bulgaria. *Id*. at p. 12.  With regard to the facts, both agreed and contested, Vassileva will principally rely on Doc. # 101, Plaintiff's Response to Defendant's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts, as this document contains both the City's allegations and Vassileva's responses thereto, as well as Doc. # 107, Defendant City of Chicago's Response to Plaintiff's 56.1(B)(3)(C) Statement of Additional Material Facts, which sets forth both Plaintiff's LR. 56.1 (b)(3)(B) Additional Facts Requiring Denial of Summary Judgment and the City's responses thereto.

## Standard of Review

This Court reviews, *de novo*, the merits of a summary judgment ruling. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] The parties settled *Vassileva I*, Case No. 18-cv-4595.

judgment as a matter of law." *Id.*, *citing Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* Fed. R. Civ. P. 56 (a)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers "all of the evidence in the record in the light most favorable to the non-moving party" and draws "all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Feliberty v. Kemper Corp.*, 98 F.3d 274, 276-77 (7th Cir. 1996). This standard should be applied to each of the arguments herein set forth.

## Summary of the Argument

Upon *de novo* review of the entire record on summary judgment, this Court cannot conclude, as a matter of law, that the City of Chicago is entitled to judgment on Vassileva's claims of national origin and sex discrimination, age discrimination, and retaliation, particularly with regard to (1) Defendant's failure to permit Vassileva to interview for the FE V position in 2018, (2) Defendant's denial of FE III acting up opportunities from March 2018 through January 2019; and (3) Defendant's denial of FE III overtime from March 2018 through the present. There is sufficient evidence of pretext as to each of these claims which must be decided by a jury. The trial court neither considered the record in the light most favorable to the non-movant nor drew reasonable inferences in favor of the party opposing summary judgment. Vassileva's remaining claims support her pretext arguments, even if not independently actionable. Finally, the trial court erred in excluding evidence of Defendant's historical pattern of discrimination of Vassileva as these historical events touch upon the City's state of mind and also support Vassileva's claims of pretext.

<u>**Arguments**</u>

I.  **THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT,
    AS A MATTER OF LAW, ON PLAINTIFF'S DISCRIMINATION CLAIMS.**

As the trial court noted, the specific claims in the underlying case concern: (1) a failed promotion to FE V in 2018; (2) a failed promotion to FE IV in 2019; (3) denial of FE III acting up opportunities from March 2018 through January 2019; (4) denial of FE III overtime from March 2018 through the present; and (5) a written reprimand on June 6, 2018. Appx.1 at p. 8.

A motion for summary judgment is a contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015), *ref.* Fed. R. Civ. P. 56(a). The party pursuing the motion must make an initial showing that the agreed-upon facts support a judgment in its favor. *Id.*, *ref.* Rule 56(a) & (c)(1); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986); *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 2001); *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 978–79 (7th Cir. 1996). A motion for summary judgment is appropriately granted if no reasonable jury could find for the nonmoving party. *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

Summary judgment is not an invitation to summarily resolve the case for or against the movant based on the paper record. *Hotel 71*, 778 F.3d at 602. A summary judgment motion represents a contention that the facts recited therein warrant judgment in the movant's favor, nothing more. *Id.* at 603, *citing Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750–51 (7th Cir. 1996); *Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991); *Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984); 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Fed. Practice & Proc. § 2720, 332–34 (3d ed.1998).  Only if the court can say, on a sympathetic reading of the record, that no finder of fact could reasonably

rule in the unsuccessful movant's favor may the court properly enter summary judgment against that movant. *Hotel 71*, 778 F.3d at 603, *e.g.*, *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A non-movant's failure to respond to a summary judgment motion, or failure to comply with Local Rule 56.1, does not automatically result in judgment for the movant. *Raymond v. Ameritech Corp.*, 442 F.3d 600 (7th Cir. 2006), *ref. Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996) (*citing Tobey v. Extel/JWP, Inc.*, 985 2d 330, 332 (7th Cir. 1993)). The ultimate burden of persuasion remains with the movants to show that they are entitled to judgment as a matter of law. *Id.*, *ref. Wienco v. Katahn Associates, Inc.*, 965 F.2d 565, 568 (7th Cir. 1992) (*citing Herman v. Chicago*, 870 F.2d 400, 404 (7th Cir. 1989)). *See also*, *Johnson v. Gudmundsson,* 35 F.3d 1104, 1112 (7th Cir. 1994) (even an unanswered motion for summary judgment cannot be granted unless the movant has shown that the facts warrant judgment in its favor); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (although plaintiff did not provide her own version of the facts, the court nevertheless views all of the facts asserted by the movant in the light most favorable to the non-moving party and draws all reasonable inferences in her favor); *Gerhartz v. Richert*, 779 F.3d 682 (7th Cir. 2015)(a moving party who fails to discharge its burden of showing that it is entitled to judgment as a matter of law is not entitled to summary judgment, even if the non-movant entirely fails to respond).

The Supreme Court has long held that the elements of proof in an employment discrimination case need not be "rigid, mechanized, or ritualistic," *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). Further, relevant considerations in determining the existence of a discriminatory purpose are the historical background of the decision, the specific sequence of events which occurred, the departure of the actual procedures followed from normal

procedure, substantive departures, and contemporary statements by the decision-makers. *Little v. U.S.*, 489 F. Supp. 1012, 1023 (C.D. Ill. 1980), *citing Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 267 (1977). Finally, the underlying discriminatory purpose must not be the sole or even dominant factor that influenced the allegedly discriminatory action. It is sufficient for it to be a substantial or motivating factor. *Id.*, *Arlington Heights*, 429 U.S. at 265.

Finally, it is rarely appropriate on summary judgment for a district court to make a finding on state of mind. *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004), *citing Alexander v. Wisconsin Dept. of Health & Family Serv.*, 263 F.3d 673, 681 (7th Cir. 2001) (cases involving questions of intent and credibility are inappropriate for summary judgment); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985), *quoting Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976), cert. denied, 429 U.S. 1040 (1977) ("[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.") As explained in *McGreal*, when an issue is contested, the plaintiff is entitled to have the factfinder decide the issue. *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004).

In the instant case, the trial court ignored genuine issues of material fact, ignored circumstantial evidence of national origin and sex discrimination, age discrimination, and retaliation and generally held Plaintiff, the non-movant, to a standard of proof which she simply did not have on summary judgment. This case must be remanded to the trial court for further proceedings, particularly with respect to Vassileva's 2018 failure to promote claims of national origin and sex discrimination, age discrimination, and retaliation.

### A.     Vassileva Was a Qualified Applicant for the FE V Position in 2018.

It is uncontested that Martin Wise has worked as a recruiter with the City's Department

of Human Resources since 2011, that he primarily recruited for the Department of Water

Management since that time, and that his duties involve reviewing materials submitted by

applicants to determine if they meet the minimum qualifications though their employment with

the City or prior experience external to the City. Doc. #107 at ¶ 15.

   Mr. Wise was the recruiter for a FE V position in the Department of Water Management

posted on April 12, 2018 (Position No. 307335), as well as the recruiter for a FE V position in

the Department of Water Management posted on September 13, 2016 (Position No. 275160).

Doc. #107 at ¶¶ 15-16.Vassileva was permitted to interview for the 2016 position, having been

found by Wise to have met minimum qualifications, but not permitted to interview for the 2018

position, having allegedly been found by Wise not to have met minimum qualifications.

   The duties of the FE V position posted in 2018 include, among other things, "[u]nder

general supervision, supervises an engineering unit at one of the water purification plants. . . .

Supervises professional and skilled trades personnel engaged in monitoring water purification

processes and adjusting pumpage rates and chemical dosages used to maintain water quality

standards." Doc. # 101-1 at PageID # 1230. Moreover, duties include supervises the

development of specification for new equipment purchases, the ordering and maintenance of

chemical inventories, the installation and testing of new and refurbished equipment, and the

maintenance of plant records and the preparation of related reports, and plans and supervises

research studies pertaining to water purification processes. *Id*. at PageID # 1231. These are the

same "essential duties" set forth in the Bid Announcement for FE V in September 2016 (Position

No. 275160).  Doc. #107 at ¶ 16.

   The qualifications for the FE V position in 2018 with respect to training and experience

were:

> Graduation from an accredited college or university with a Bachelor's degree in Chemical or Civil Engineering or a directly related field of engineering supplemented by four years of progressively responsible filtration engineering experience including one year of supervisory experience, or an equivalent combination of training and experience, provided the minimum degree requirement is met. A Class "A" Public Water Supply Operator license is required.

Doc. # 101-1 at PageID # 1232. The qualifications with respect to training and experience for the FE V position in 2016 are identical. Doc. #107 at ¶ 16. There is nothing in the position descriptions for either 2016 or 2018 which requires that the supervisory experience requested be an "essential job function" and in fact, the job descriptions state that in lieu of "one year of supervisory experience," an applicant may have "an equivalent combination of training and experience, provided the minimum degree requirement is met." *Id*. Moreover, even if "supervisory experience" as an essential job function is required, the FE II Job Description states "NOTE: while the list of essential duties is intended to be as inclusive as possible, there may be other duties which are essential to particular positions within the class." *Id*. Vassileva explained for example, that an FE II has supervisory authority during two person Control Center operations, particularly during the afternoon and midnight shifts when FE IVs are not working. Doc. # 101-1 at ¶ 11.

The 2018 Bid Announcements also indicate that applicants could submit the information about educational background and work experience by attaching a resume, pasting a resume, or completing the online resume fields. Doc. # 101-1 at PageID # 1232. Moreover, it explained, "[y]our initial evaluation will be on information provided on the application form and documents submitted with the application." *Id*. Finally, the Bid Announcements provide "if you are selected to be hired you must provide, upon request, adequate information regarding your educational and

employment history as it relates to the qualifications of the position for which you are applying."
*Id*.

Vassileva provided Wise with all necessary information including that related to her
"four years of progressively responsible filtration engineering experience including one year of
supervisory experience, or an equivalent combination of training and experience." Doc. # 101-1
at ¶ 18. In 2018, Vassileva provided Mr. Wise with the same information, with updates, as she
had provided him in 2016. Doc. #107 at ¶ 17. On the face of her application, Vassileva possessed
the minimum qualifications for the 2018 FE V position, just as she had for the 2016 FE V
position. *Id*.

Vassileva's on-line application and resume is found in the record at Exhibit C to Wise's
Declaration at Doc. # 85-15 at Bates number VASSDEF00366-78. In her submissions, Vassileva
indicates that she previously worked as a Filtration Engineer III, identifies her current position as
FE II, and states that she has at least one year of supervisory experience related to the
responsibilities of the position. VASSDEF000366-69. Moreover, in her resume, she indicates,
among many other things, that as a FE II since 2001, she "[s]upervised Control Chemists on
assigned shifts," "[s]upervised staff engaged in compiling contract packages for submission to
the Department of Procurement Services," and "[s]upervised outside contractors as required."
VASSDEF000376-77. Vassileva has a Master's Degree in Chemical Engineering, a Bachelor's
Degree in Chemical Engineering, and a Bachelor's Degree in pediatric nursing. App. 1 at p. 12;
Doc. #107 at ¶ 1. She also holds a Public Water Operative License Class A from the
Environmental Protection Agency, and a certificate in project management from DeVry
University. Doc. #107 at ¶ 2. She began with the City's Department of Water Management in
July or August of 2001. *Id*. at ¶ 3.

13

Vassileva worked in the Mechanical, Instrumentation, Operations, and Chemical Inventory sections. Appx. 1 at p. 13; Doc. #107 at ¶ 4. When she worked in the Mechanical Section in 2009, she served several times as a supervisor when her supervisor was on vacation. Doc. #107 at ¶ 5. As acting supervisor, Vassileva claims she "supervised professional and skilled operator engineers and trades people, including outside contractors." Doc. #101 at ¶ 11. Yadi Babapour has been Vassileva's direct supervisor since 2010 or 2011[2].  Doc. #107 at ¶ 6. From 2010 through the end of 2012, the Control Center (also referred to herein as "CC") operated with a two-person control so even as an FE II in the Control Center, Vassileva supervised the chemists and operator engineers. Doc. #107 at ¶ 6. FE IIs supervise control center chemists, specifically during the afternoon and midnight shifts when FE IVs and FE Vs are not there. Doc. # 101 at ¶ 11. The City admits that "FEs working in the CC make most of the purification and treatment process decisions. The CC operates 24 hours a day, 7 days a week, and the FE or FEs assigned to the CC are responsible for monitoring all aspects of the plant and the entire water purification and treatment process." Doc. #101 at ¶ 10. "All aspects" of the plant would to reasonable persons include supervision of personnel when necessary. As an FE II from 2001 through 2019, Vassileva supervised and trained other FEs, including Syed Rahim, Maruja Yoshimura, John Ellis, Matthew Matti, and Sankat Patel. Doc. #101 at ¶ 11. This was not specifically denied by the City and is consistent with Wise's, Salinas's and Babapur's testimony

---

[2] The trial court noted in its opinion that Vassileva has had a number of supervisors over the years.  However, these other "supervisors," *i.e.*, Ed Salinas, John Pope, and Alan Stark, were officials within the chain-of-command at the Water Department. Doc. #101 at ¶ 7.

that FE IIIs supervise FE IIs.[3] Finally, it is uncontested that in 2012, Vassileva performed the duties of an FE III in the Control Center with pay. Doc. # 107 at ¶ 6.  The City does not deny that Vassileva performed supervisory duties as an FE III, but responds that the position of FE III does not include supervision as a job duty. *Id*. Moreover, the City claims that Vassileva's acting-up experience cannot count towards her supervisory experience, but even so, based upon her qualifications, it is clear that Vassileva had the necessary supervisory experience and training.

While the City may dispute the extent of Vassileva's supervisory experience, the real questions is whether Martin Wise truly believed in 2018 that Vassileva did not have the requisite supervisory experience to be eligible to interview for the FE V position. As discussed *infra*, Vassileva has certainly offered enough evidence to suggest that Wise, in fact, did not reasonably believe she lacked the minimum qualifications.

### B.    Vassileva Set Forth Enough Facts to Create an Inference of Pretext.

To succeed on a claim for discrimination under Title VII, a plaintiff must present evidence that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) discriminatory intent, shown by direct or indirect evidence.  *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010). This Court has stated, however, that the sole question that matters, "is simply whether the evidence would permit a reasonable factfinder to conclude

---

[3] In the City's original submissions, including Declarations from Martin Wise, Yadi Babapour, Eduardo Salinas, the City admitted that FE IIIs indeed supervise subordinate FE IIs as an essential part of their job function. After summary judgment was fully briefed, Defendant attempted to claw back this admission, but the trial court did not permit Defendant's to change the testimony.  See Doc. ## 109, 111 and 115.

that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action."  *Ortiz v. Werner Enter., Inc.*, 834 F.3d 60, 764 (7th Cir. 2016). The types of evidence a court considers is in deciding whether there is a triable issue of fact on the question of the defendant's discriminatory intent included "(1) suspicious timing; (2) ambiguous statements or behavior toward other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). The court is to consider all of the possibly relevant evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself."  *Ortiz*, 834 F.3d at 765. There are elements of each of these types of evidence with respect to the City's failure to permit Vassileva to interview for the FE V position in 2018.

Vassileva claims that Wise's justification for excluding her from the FE V eligibility list were pretextual, not as the trial court suggests, that Wise "incorrectly" found her not to meet the minimum qualifications for the FE V position. Pretext is defined as "a dishonest explanation, a lie, rather than an oddity or an error." *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). To establish pretext, the plaintiff must show either that the employer was motivated by a discriminatory reason or that the proffered reason is "unworthy of credence." *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003). Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes summary judgment.  *Id.*, citing *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir. 1995). This Court explained, Zaccagnini may avoid summary judgment by pointing to specific facts that place defendant's explanation in doubt. *Id.*, *ref. Schuster v. Lucent Techs.*, 327

16

F.3d 569, 578 (7th Cir. 2003). In *Zaccagnini*, this Court ultimately concluded that given the shifting nature of defendant's justification for failure to rehire the plaintiff, along with evidence that called into question the defendant's proffered justification, "a jury could determine defendant's reasoning to be pretextual. 338 F.3d at 680.

Moreover, in *Zaccagnini*, the defendant therein argued that the Court should discount plaintiff's evidence challenging defendant's proffered reasons because "he has not provided any evidence pointing to age as a factor" in defendant's decision. *Id*. The Court rejected this argument as "Zaccagnini's case has proceeded under the indirect method of proof, and under this analysis, a plaintiff need not produce evidence of discrimination." *Id*.  This Court continued, "[w]e emphasize that [plaintiff's] failure to bring any evidence regarding age does not defeat his claim *per se*, the special virtue of the indirect method of proof is that it allows victims of age discrimination to prevail without presenting any evidence that age was a determining factor in the employer's motivation. Holding to the contrary would violate one of the purposes of *McDonnell Douglas* and *Burdine*, which is to permit plaintiffs to recover, even if they are unable to discover evidence of discrimination, simply by proving that the employer's proffered justification is unworthy of credence."  *Id*., *citing Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 451-52 (7th Cir. 1992); ref. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Thus, if Vassileva can reasonably show that Wise's explanation for not permitting her to interview for the FE V position in 2018 is false, this is enough to create an inference of both discrimination and retaliation.

This Court has also held that in reviewing a summary judgment, an appellate court must consider the entire record. If study of the record reveals that inferences contrary to those drawn

by the trial court might be permissible, then summary judgment should be reversed. *Powers v. Dole*, 782 F.2d 689 (7th Cir. 1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655, (1962); *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir. 1985). In the instant case, inferences were drawn against the non-movant contrary to established doctrine and the trial court's entry of summary judgment must be reversed.

In the instant case, as in *Zaccagnini*, we see a similar shift in Defendant's explanations. In 2016, Wise correctly found that Vassileva met the minimum qualifications for the FE V position and permitted her to interview. The denial of the FE V promotion in 2016 was one of the bases for Vassileva's initial charges with the IDHR/EEOC which later resulted in *Vassileva I*. The first filed IDHR charge, Charge No. 2017 CI 1746, was dismissed on March 27, 2018, and the second filed IDHR charge, Charge No. 2017 CA 2059, was dismissed on April 4, 2018.

On April 30, 2018, less than a month after the second IDHR complaint was dismissed, Wise struck Vassileva's name from the eligibility list for an identical FE V position which had become available. Doc. # 85-15, Exhibit C at VASSDEF000373.  While Wise claims he was unaware of Vassileva's IDHR charges prior to removing her from the eligibility list for the June 2018 FE V position, a reasonable jury could very well conclude otherwise. Mr. Wise not only recruited for the identical 2016 and 2018 FE V positions, but he was also present for the 2016 candidate interviews and the consensus meeting at which the successful FE V candidates were selected.  In the 2017 cases, the City of Chicago did not take the position before the IDHR that Vassileva should never had been permitted to interview or that she was not qualified for the FE V position because of her lack of supervisory experience, rather the City readily admitted that Vassileva was determined to have met minimum qualification.  According to the City of Chicago, Vassileva was not promoted to FE V in 2016 because her scores during the interview

were the lowest overall among the candidates.  Yet, once the IDHR cases were dismissed, the City of Chicago determined that Vassileva was not eligible to be interviewed for the newly opened FE IV because she allegedly lacks supervisory experience.  The recruiter is the same, the job description is the same, the job requirements are the same, yet Vassileva was permitted to interview in 2016 but not in 2018.  The trial court completely ignored the circumstances and concluded that the City was able to determine its own eligibility standards and that the fact that there were different criteria in the past is of no consequence.

The trial court concluded that in processing applications for the FE V position, "Wise deemed all FE IIs unqualified and ineligible to interview for the FE V position. [DSOF] *Id*. ¶¶ 20, 23-24. This included Vassileva and two other FE IIs. *Id*. The City's purported reason for finding the FE IIs ineligible was that pursuant to Department of Human Resources rules, the City only counted supervisory experience performed while in a position that supervises as an essential job function.  *Id*. ¶ 25." While this is certainly what Defendant claimed, other than Wise's self-serving statements, the City does not provide a single document which supports a "rule" that the "supervisory experience" referenced in the Position Description had to be performed in a position that supervises as an essential job function. Defendant's statement of facts at ¶ 25 certainly does not identify any such rule. Moreover, despite the City's alleged denial, see Doc. # 107 at ¶ 14, Alan Stark admitted that there was no prohibition against an FE II applying for an FE V position if the qualifications of the job position were met. *Id*.  Mr. Stark also admitted that other people have been able to jump positions.  *Id*.  The citation to Defendant's Exhibit 11, at p. 65:9-14 is accurate. A reasonable jury could conclude that this directly contradicts Wise's statement claim that because an FE II does not have supervisory authority as an essential job function, an FE II is ineligible for an FE V position.

Moreover, a reasonable inference from Mr. Stark's testimony is that there was no "rule" regarding supervisory authority as an essential job function because if there was such a rule, no FE II would never be able to jump to an FE IV or FE V position, both which require supervisory experience.

As the evidence showed, John Ellis, an FE II at the time, was not only permitted to interview for the FE V position in 2016, he was actually given the position. Doc. # 107 at ¶¶ 14, 18. In 2015, Herberto Rodriguez and Jeffery Wyteniec were both promoted from FE II positions to FE IV. Doc. # 107 at ¶ 11. Thus, during Wise's tenure, three non-Bulgarian men have been double or triple promoted from FE II to FE IV and FE V, yet Vassileva cannot obtain an interview in 2018 because of her alleged lack of supervisory experience. This makes no sense.

Further, while Vassileva acknowledges that the individuals that Wise determined met the minimum qualification for the FE V position all held FE IV positions and were older that Vassileva, this does not mean that serving as an FE IV was a "minimum qualification" for the FE V position. If Vassileva had been deemed to meet "minimum qualifications," the fact that she was an FE II and the others FE IVs would have been irrelevant. The pre-qualification list is created based solely upon satisfactory completion of the interview; the pre-qualified candidates are then hired from the list in order of seniority. Doc. # 85-15 at ¶ 15. The three candidates who were interviewed for the FE V position were each placed on the pre-qualified list – all three were male and none of the three were Bulgarian. *Id*.

While the City can certainly determine its own eligibility standards, those standards must be set forth in the position description or in some other writing. As already noted, there is nothing in the job description for FE V that requires that supervisory experience be earned at any specific engineering level or that supervisory experience be an "essential function" of the

applicant's current job title. Further, Defendant admitted that the "essential duties" and "qualifications" for the FE V position were identical in both 2016 and 2018. Doc. # 107 at ¶ 16. So the trial courts explanation "that the City may have had different criteria for eligibility for this FE position in the past is of no consequence," App. 1 at p. 24, is nonsense. Wise could not explain why Vassileva was treated differently other than to say that he was mistaken in 2016. The City of Chicago did not produce any evidence that the criteria had changed, either implicitly or explicitly, from 2016 to 2018. Who brought the "mistake" to Mr. Wise's attention? Was Wise really "mistaken" when he signed his Declaration on February 5, 2021, Doc. 85-15, attesting that "FE III is a supervisory position and its essential functions involve supervising FE IIs." *Id.* at ¶ 22. A reasonable jury could conclude not, and that Wise knew full well that Vassileva had supervisory experience because she performed the duties of an FE III during two person control from 2010 through 2012, or because she trained other FE IIs, or because she served as interim supervisor when her supervisor was on vacation. Vassileva was permitted to interview in 2016 because she was qualified to do so; with two additional years of training and experience, Vassileva did not become less qualified in 2018.

Further, a reasonable jury could conclude that even if Mr. Wise had not been made aware of Vassileva's IDHR/EEOC charges[4] during the one-year pendency of those charges – which is highly unlikely given that (1) Mr. Wise worked in the City's department of human resources, (2) the respondent was the City of Chicago, and (3) Mr. Wise had been involved in the very hiring process under challenge, Yadi Babapour, Vassileva's direct supervisor, Alan Stark, Deputy

---

[4] Wise declared that before March 2019, he was not aware that Plaintiff had previously filed charges with IDHR, complained internally to DWM, or filed lawsuits against the City. Doc. # 85-15 at ¶ 30.

Commissioner, and Marisol Santiago, Managing Deputy Commissioner, did have knowledge of Vassileva's IDHR/EEOC charges.  A reasonable jury could conclude that these persons freely communicated with Mr. Wise given that they communicated on every other aspect of the hiring process in the Water Department.

The trial court also claims that even if Vassileva could establish that she was qualified for the position, she "has not adduced evidence that the individual selected for the role had the same or lesser qualifications than she did."  App. 1 at p. 25. The trial court notes that the employee selected to fill the vacancy, Wroblewski, is older than Vassileva, a male of unknown national origin, was an FE IV since 2015, had worked as an FE III for nearly 17 years before that, and had more seniority that Vassileva based on his hire date.  *Id.*  Yet, the trial court completely ignores that two other candidates were also placed on the pre-qualified candidate list, David Keon and Chamoon Anawes. Doc. # 101 at ¶¶ 27-29.  Because these candidates were pre-qualified, they were hired as FE Vs on November 7, 2018 when two additional FE V vacancies were opened.  *Id.* at ¶¶ 30-31.  Both of these candidates were male and non-Bulgarian. It is uncontested that Anawes's continuous service date is August 16, 2001, Doc. # 107 at ¶ 8, which is *after* Vassileva's service date of August 1, 2001.[5]  Vassileva would have been eligible for the third FE V vacancy if she had been permitted to interview and placed on the eligibility list.

---

[5] Interestingly, the trial court stated in its opinion that Vassileva worked as a FE II for the City's Department of Water Management ("DWM") from approximately July 1, 2002 through June 30, 2019, App. 1 at p. 13. This is simply incorrect. Vassileva's continuous service date, which is the date used to determine seniority, is actually August 1, 2001. Doc. #107 at ¶¶ 1, 8.

**C.     The Trial Court Erred in Failing to Consider Past Discriminatory Remarks
Made by Defendant and Other Acts of Past Mistreatment as They Are
Relevant to the Defendant's State of Mind and Support an Inference of
Pretext in the Present Case.**

While there is certainly enough evidence produced by Vassileva to raise an
inference of pretext apart from past discriminatory comments and conduct, the trial court erred in
failing to consider these additional factors; the trial court believed that because the past
discriminatory comments and conduct supported the contentions in *Vassileva I*, they could not
also be used in support of this case. In *Vassileva I*, the trial court denied, in part, summary
judgment based upon arguably suspect statements made by supervisory personnel. The
statements themselves were not deemed actionable, but the court felt that a reasonable jury could
conclude they evidenced national origin, sex, and age discrimination with respect to Plaintiff's
acting-up and overtime opportunities through February 2018. In *Vassileva I*, the court held
"[v]iewing the evidence in the light most favorable to Plaintiff, she has provided sufficient facts
from which a jury could conclude that she had been the victim of sex, age, and national origin
discrimination relating to Defendant's failing to approve her to act up." App. 1 at pp. 7-8, citing
*Vassileva v. City of Chicago*, 2019 WL 5085717 (N.D. Ill. Oct. 10, 2019) at *5.

As Vassileva alleged, Ed Salinas made comments about Plaintiff's gender and age. Doc.
# 101 at ¶ 38. He also commented several times that Vassileva was too old to work in Control
Center in the rotation shift. *Id.* Moreover, Yadi Babapour made several statements to Vassileva
regarding her gender and national origin. *Id.* at ¶ 39. He also told Vassileva, when she came to
his office to ask about acting-up as a FE III, that if she did not like it here, she could always go
back to her country where they don't have unions or any other place to go to complain. *Id.*

Even after filing her complaints with the Illinois Department of Human Rights in
February and March 2017, Alan Stark made reference to Vassileva's national origin and age.

Doc. # 101 at ¶ 40.  Vassileva heard Mr. Stark tell Clarence Wisnar "she might have a good training but is too old to work in the Control Center and go to all the activities." *Id*.  Stark also stated that he was not sure they had trainings where Tinka came from, but that "in her culture" Tinka believed she could attend training any time she wanted. *Id*.

These statements support Vassileva's claims of pretext and show the City's state of mind; they should be considered for these purposes. *See*, *Hashan v. California St. Bd. Equalization*, 200 F.3d 1035, 1049-50 (7th Cir. 2000). Moreover, just because the statements may have been used in support of Vassileva's contentions in *Vassileva I*, does not mean  they cannot be used in this matter if a proper foundation is laid.

> **D.    The Trial Court Erred in Failing to Consider the City's Historical Treatment of Plaintiff as Compared to Her Similarly Situated Colleagues as it is Supports an Inference of Pretext in the Present Case.**

As previously noted, Vassileva's 's continuous service date, which determines seniority, is August 1, 2001. Doc. # 107 at ¶ 8. In December of 2007, she applied for promotion to one of two vacant FE IV positions and was permitted to interview in January 2008. *Id*. at ¶ 9. Vassileva received the second highest interview score with a 3.88. *Id*. Jack Wroblewski received the highest average of 4.19, while Harold Keaton and Krystyna Reschke received scores far below Vassileva. *Id*. The Deputy Commissioner of the Bureau of Water Supply as well as the Assistant Chief Filtration Engineer recommended that Vassileva be placed into one of the open FE IV positions. *Id*. Despite the January 2008 recommendation, she was never promoted to FE IV. While both the collective bargaining agreement and the City's Personnel Rules required position vacancies are to be filled as expeditiously as possible, the FE IV vacancies remained vacant from 2008 through 2015. *Id*. at ¶ 10.

In August of 2015, Plaintiff applied for one of eight available FE IV positions, but she was not selected. Doc. # 107 at ¶ 11. Herberto Rodriguez and Jeffery Wyteniec, both men of non-Bulgarian decent with less seniority, less experience, no Class A license and no Master's Degree, were both promoted from FE II positions to FE IV. *Id*. Miguel Guzman, a male of non-Bulgarian decent, who started with the Department of Water Management in 2012, as well as Krystyna Reschke, a female of non-Bulgarian descent, and Harold Keaton, a male of non-Bulgarian decent, each of whom had less experience than Plaintiff, were promoted from FE III to FE IV. *Id*. at ¶ 12.

Despite the FE IV promotions in 2015 which created numerous FE III vacancies, Defendant did not open any FE III vacancies until 2019. Doc. # 107 at ¶ 13. Instead, for several years, the FE IVs were acting as FE IIIs in the Control Center, but getting paid as FE IVs, including overtime, sick days, vacations, and holidays. *Id*. In July 2019, Plaintiff was finally promoted to FE III. App. 1 at p. 13.

The foregoing examples, while no longer actionable, demonstrate how the City has systematically denied Vassileva's professional advancement in the Department of Water Management while allowing younger, less experienced and primarily male colleagues to advance. This type of historical evidence may therefore be admissible to show the City's discriminatory conduct. *See*, *Hashan*, 200 F.3d at 1049.

### E.    The Trial Court Erred When it Failed to Consider Plaintiff's Claims Regarding the 2019 FE IV Promotion.

In 2015, there were a number of promotions into the FE IV positions.  Doc. # 107 at ¶ 21. However, despite available FE III vacancies, Defendant did not open any FE III vacancies until 2019. *Id*.  On June 12, 2019, seven employees, Syed Raheem, Tinka Vassileva, Maruja Yoshimura, Mohammad Ashayeri, Mohammad Mashal, Ahmed Almhana, and Matthew Matti,

interviewed for newly-opened FE III positions. Doc. # 107 at ¶ 22. On June 13, 2019, a consensus meeting was held and all the candidates were placed on the PQC approval list. *Id*. Thereafter, Sharon Jackson met with each of the employees from June 17, 2019 through June 20, 2019. *Id*.

After speaking with Sharon Jackson, Syed Raheem, Tinka Vassileva, and Matthew Matti accepted the FE III positions. Doc. # 107 at ¶ 23. However, after speaking with Jackson, the other four candidates declined the FE III positions. *Id*. Maruja Yoshimura signed a waiver on 6/18/19, indicating she was "waiting for another position to open and would like to remain eligible for consideration." Doc. # 101 at ¶ 34; Doc. # 85-21. Mohammad Mashal signed a waiver on 6/18/19 stating in part, that he did not want to be excluded "from other opportunities that will come in six months." *Id*. Mohammad Ashayeri signed a waiver on 6/20/19 stating, "I will become ineligible for the other internal job opportunities for the next six months if I accept this position." *Id*. Ahmed Almhana signed a waiver on 6/20/19, explaining "may be waiting for higher position." *Id*. While Sharon Jackson denies having told the four candidates about the upcoming FE IV positions, recruiting for the new FE IV positions began in March 2019. Sharon Jackson, Martin Wise, and Ed Salinas participated in the Intake Session for those positions on March 19, 2019. Doc. 101-1 at PageID # 1262; Doc. # 101 at ¶ 25. Moreover, a job vacancy is not disclosed to the employees until a Bid Announcement is posted and disseminated which did not occur until July 3, 2018, just days after the waivers were signed. Doc. # 101 at ¶ 25. Given these facts, a reasonable jury can look at the four waivers, which are Defendant's business records, and conclude that someone alerted these four employees about the impending FE IV vacancies; a reasonable inference can be had that the information was provided by someone in

Defendant's control group as the information was not made public until the July 3, 2018 posting and Sharon Jackson, Martin Wise, and Ed Salinas admittedly created the position in March 2019.

Vassileva was not told that there would or could be upcoming FE IV openings for which she would be ineligible if she accepted the FE III position. Doc. # 101 at ¶ 24. If she had been told of the FE IV openings, she would have also waived the FE III position. *Id*. On November 13, 2019, a consensus meeting for the new FE IV positions was held and Maruja Yoshimura, Mohammad Ashayeri, Mohammad Mashal, and Ahmed Almhana were each placed on the PQC list and except for Almhana, were promoted. *Id*. at ¶ 26. In fact, all seven bid candidates were placed on the PQC list. *Id*. Had Vassileva been told of the upcoming vacancies, she surely would have been placed on the PQC list and would have been promoted. She had seniority over each of the candidates, but for Hazem Zahdan. *Id*.

While Vassileva's June 18, 2018 charge with the IDHR/EEOC could not have included a failure to promote claim which occurred in 2019, the failure to inform Vassileva that there soon would be FE IV position openings, while informing her similarly situated colleagues of these opportunities is a continuation of Defendant's failure to permit Vassileva to advance within the Department of Water Management. But at the very least, this is additional evidence of the City's state of mind and pretext.

### F.    The Trial Court Erred When it Failed to Consider Vassileva's Claims Regarding Denial of FE III Acting Up Opportunities from March 2018 Through January 2019, Denial of FE III Overtime from March 2018 Through the Present, and a Written Reprimand on June 6, 2018.

While Vassileva concedes that any claims regarding the denial of acting-up and overtime opportunities prior to March 2018 were properly the subject of *Vassileva I*, she does not agree that because the acting-up eligibility list was not modified until January 2019, she cannot complain. Salinas testified that Vassileva was ineligible to Act Up until she demonstrated she

27

could competently perform FE III duties. Doc. # 101 at ¶ 45. Defendant admits that Vassileva completed her training "for Acting-Up to FE III" the first week of July, Doc. # 101-1, yet Defendant "did not review acting up eligibility for FEs again until December 2018." Doc. # 101 at ¶ 46. Salinas offered no explanation as to why he did not reassess Vassileva once she had completed training in July 2018 or as to why he failed to review the schedule for an entire year. A reasonable juror could conclude that Salinas's failure to return Vassileva to the control center shift schedule once she completed her training was contrary to his claimed intention, particularly in light of all the other evidence suggesting pretext.

The history behind Salinas's declaration that Vassileva was not qualified to act-up is also curious. On December 30, 2017, Yadi Babapour authorized Vassileva to work in the Control Center and she was placed on the rotation schedule for 2018. Doc. # 101 at ¶ 29. On or about February 22, 2018, Mr. Babapour confirmed with Vassileva that she was scheduled to start Acting-Up the following week. The next day, however, Mr. Babapour informed her that she would not begin Acting-Up and that Maruja Yoshimura had been assigned to Vassileva's rotation. Mr. Babapour told Vassileva that this decision did not come from him, but from Ed Salinas and told her that she would receive an explanation from John Pope that Monday; she did not. In fact, Vassileva did not receive any explanation until July 2018, when she learned that Defendant claimed she was not eligible to Act-Up because of three alleged deficiencies occurring on December 16, 2017, January 17-19, 2018 and February 2, 2018. Vassileva contends that the City made-up the deficiencies to falsely justify removing her from the rotation schedule in the Control Center. Doc. # 101 at ¶ 32.

Vassileva claims these allegations were falsified and in support of this, she states that the City, through its agent Jack Wroblewski, the FE V with whom Vassileva had been closely

working, admitted to her that John Pope and Yadi Babapour unexpectedly called him into Mr.

Pope's office on January 23, 2018, on his day off, and instructed him to sign a pre-drafted

document criticizing Vassileva's work performance. Wroblewski told Plaintiff that he told

Babapour and Pope that Plaintiff was working with him and that she was performing as an FE III

and was ready to be acting up in the Control Center. Wroblewski said that he tried to explain to

Babapour and Pope that Alum changes, one of the criticisms made, were a regular practice and

that Vassileva was not at fault; the men told him to sign the papers anyway. He told Vassileva

that, although he did not agree with the written criticisms, he did sign the paperwork.

Wroblewski apologized to her and appeared ashamed when he admitted that he anticipated

receiving four additional overtime hours for his deeds. In April 2018, the City removed Mr.

Wroblewski from the shift schedule so that he could work in the Tech Office, a change Mr.

Wroblewski had been seeking for some time.

Finally, similarly situated non-Bulgarian colleagues with fewer qualifications, seniority,

education, and experience were allowed to Act-Up throughout 2018. Sanket Patel and Brandon

Ramirez, two non-Bulgarian males, who started in 2016 were permitted to act up as FE IIIs. Doc.

# 101 at ¶ 30. Syed Raheem, Ahmed Almhana, and John Ellis, each non-Bulgarian male were

also permitted to act up as FE IIIs. *Id*. One female FE II, Maruja Yoshimura, non-Bulgarian, was

permitted to Act-Up as well. *Id*. Further, most of the FE IIs permitted to Act-Up were much

younger than Vassileva, including Maruja Yoshimura, Ahmed Almhana, Sanket Patel, and

Brandon Ramirez.  Only Syed Raheem, who started in the Department of Water in 2009, was

over the age of forty. With the exception of Matthew Matti, a new employee, Vassileva was the

only FE II not permitted to act up as an FE III in the Control Center. Doc. # 101 at ¶ 31.

Similarly, while it may not amount to an adverse job actions, the written reprimand on June 6, 2018, which Vassileva contends is completely unjustified, Doc. # 101 at ¶ 32, may also be indicative of the City's state of mind and support an inference of pretext with respect to the 2018 failure to promote claim.

## II.     THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT, AS A MATTER OF LAW, ON PLAINTIFF'S RETALIATION CLAIM.

Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

To succeed on a retaliation claim, a plaintiff can take a "direct" approach and "show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 472 (7th Cir. 2018), citing *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). Alternatively, a plaintiff may take an "indirect" approach, by which he "must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than similarly situated employees who did not engage in protected activity." *Id*. If the plaintiff makes that showing, "the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for its action," which it is then up to the plaintiff to expose as pretext. *Id*.

As this Court has instructed, the direct method is not synonymous with "direct evidence." *Metzger v. Illinois State Police*, 519 F.3d 677, 681 (7th Cir. 2008). "[T]his Court recently has clarified that ... 'circumstantial evidence that is relevant and probative on any of the elements of

a direct case of retaliation may be admitted and, if proven to the satisfaction of the trier of fact, support a case of retaliation.'" *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (*quoting Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006)). Thus, "a plaintiff must show through either direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Metzger*, 519 F.3d at 681, *citing Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). If the plaintiff's evidence of retaliatory animus is contradicted, the case must be tried unless the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, "in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (*quoting Stone v. City of Indianapolis Pub. Util. Div*., 281 F.3d 640, 642 (7th Cir. 2002)).

There is no doubt that Vassileva engaged in protected activity when she filed EEOC/ IDHR complaints against the City of Chicago, Department of Water Management on February 2 and March 14, 2017, alleging sex, national origin, and age discrimination. See *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (plaintiff's filing of a complaint of discrimination with the EEOC was "protected activity"). There is also no doubt that Vassileva suffered adverse employment actions when Wise refused to permit her to interview for the FE V position in 2018 and when the City failed to tell Vassileva about impending FE IV vacancies when she was offered an FE III position in 2019, while telling most of the other qualified FE III bidders about the FE IV vacancies so that they could reject the FE III position for the higher ranked and more lucrative FE IV positions.

The question is whether Vassileva has produced enough credible evidence to reasonably

support a causal link between the protected activity and the adverse action. As this Court has instructed, this is generally not a question that can be determined on summary judgment. "Suspicious timing can . . . raise an inference of a causal connection." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Moreover, "[w]hen an adverse employment action follows on the heels of a protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct, the causation element of the *prima facie* case is typically satisfied." *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1007 (7th Cir. 2018), *citing Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001). While this Court rejects "any bright-line numeric" rule, an interval of a "few weeks or even months" may provide probative evidence of the required causal nexus "when there is corroborating evidence of retaliatory" motive. *Id*. at 861. Moreover, this Court has held, an employer's sudden dissatisfaction with an employee's work performance after that employee engaged in a protected activity may constitute circumstantial evidence of causation. Similarly, Wise's newfound "rule" that FE IIs cannot apply for FE V vacancies implemented directly after Vassileva's administrative charges were dismissed provide probative evidence of the required causal nexus, particularly given the City's other questionable acts. *Lang v. Ill. Dep't of Children and Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) (considering plaintiff's previous five-year employment record as circumstantial evidence giving rise to an inference of causation when combined with other circumstantial evidence). All of the other factors discussed with regard to Vassileva's claims of discrimination are equally applicable to Vassileva's retaliation claim and similarly create an issue concerning the City's true intent and motivation.

## CONCLUSION

For all the reasons herein discussed, the order and final judgment of the district court granting Defendant's motion for summary judgment must be vacated and this matter remanded to the trial court for further proceedings.

Respectfully submitted,


/s/ Deidre Baumann
_____

## **Certificate of Compliance**

Pursuant to Circuit Rule 32 (a)(7)(C), this brief complies with the type volume limitation. This brief contains 9,556 words, as indicated by my Microsoft Word "Word Count," excluding the corporate disclosure statement, the table of contents, table of authorities, and attorney certifications.

/s/ Deidre Baumann

_____

# APPENDIX

## <u>Table of Contents</u>

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appx. 1

Memorandum Opinion and Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appx. 2

Defendant's Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 83

Defendant City of Chicago's Memorandum in Support
of Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 84

Defendant City of Chicago's Local Rule 56.1 (a)(3) Statement
of Undisputed Material Facts in Support of its Motion for Summary Judgment . . . . . . . Doc. # 85

Appendix of Exhibits to Defendant's Statement of Facts . . . . . . . . . . . . . . . . . . . . . Doc. # 85-1

    Exhibit 1 Tinka Vassileva 1/16/2019, Deposition Transcript . . . . . . . . . . . . . . Doc.# 85-2

    Exhibit 2 Tinka Vassileva's Work History . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc.# 85-3

    Exhibit 3 Tinka Vassileva's 10/30/2020, Deposition Transcript. . . . . . . . . . . . Doc.# 85-4

    Exhibit 4 Alan Stark Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc.# 85-5

    Exhibit 5 Yadi Babapour 2/13/2019, Deposition Transcript. . . . . . . . . . . . . . . Doc.# 85-6

    Exhibit 6 Eduardo Salinas 2/14/2019, Deposition Transcript Doc.# 85-6 . . . . . Doc.# 85-7

    Exhibit 7 Eduardo Salinas Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc.# 85-8

    Exhibit 8 John Pope Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Doc.# 85-9

    Exhibit 9 John Pope 2/14/2019, Deposition Transcript . . . . . . . . . . . . . . . . . Doc.# 85-10

    Exhibit 10 Yadi Babapour Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc.# 85-11

    Exhibit 11 Alan Stark 2/27/2019, Deposition Transcript . . . . . . . . . . . . . . . . Doc.# 85-12

    Exhibit 12 FE Series Job Descriptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc.# 85-13

    Exhibit 13 Jacek Wroblewski 2/20/2019, Deposition Transcript . . . . . . . . . . . Doc.# 85-14

    Exhibit 14 Martin Wise Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc.# 85-15

Exhibit 15 Martin Wise 10/20/2020, Deposition Transcript . . . . . . . . . . . . . Doc. # 85-16

Exhibit 16 Alix Meza Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 85-17

Exhibit 17 City's Answers to Interrogatories and Requests for Production . . Doc. # 85-18

Exhibit18 Matthew Matti Work History . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Doc. # 85-19

Exhibit19 Syed Raheem Work History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 85-20

Exhibit 20 FE III Bid Waivers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 85-21

Exhibit 21 Excerpts from AFSCME Council 31 Contract . . . . . . . . . . . . . . Doc. # 85-22

Exhibit 22 City's Acting Up Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 85-23

Exhibit 23 Marisol Santiago 2/20/2019, Deposition Transcript . . . . . . . . . . Doc. # 85-24

Exhibit 24 Krystyna Reschke Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 85-25

Exhibit 25 Marisol Santiago Declaration . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 85-26

Exhibit 26 Excerpts from City of Chicago Personnel Rules . . . . . . . . . . . . . Doc. # 85-27

Exhibit 27 Judge Guzman's 10/10/2019 Order, Case No.18 cv 04595 . . . . . . Doc. # 85-28

Exhibit 28 Tinka Vassileva's IDHR Complaint
Information Sheet, 6/11/2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 85-29

Plaintiff's Response to Defendant's Local Rule 56.1(a)(3) Statement of Undisputed
Material Facts and Additional Facts Requiring Denial of Summary Judgment . . . . . . . Doc. # 101

Declaration of Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 101-1

Interview Results for Filtration Engineer IV – 2008

Memorandum re Interview Results for FE IV – 2008

2018 Bid Announcement for FE V – 2018

Interview Letter for FE V – 2016

Performance Evaluations Policy

Operator Certification for Chamoon Anawes

Operator Certification for David Keon

December 30, 2016 Memo to Vassileva re Training Schedule and Shift Assignment

May 25, 2018 Memo to Vassileva re Conclusion of Training

February 22, 2018 Memo to Vassileva from Ed Salinas re Disqualification

Vassileva Application for FE V with Resume – 2018

March 19, 2019 Hire Certification Form

Plaintiff's Memorandum in Opposition to Defendant's Motion
for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 100

Defendant City of Chicago's Response to Plaintiff's 56.1(B)(3)(C) Statement
of Additional Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 107

Defendant's Reply Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Doc. # 107-1

Defendant City of Chicago's Appendix of Exhibits to its Response to Plaintiff's
56.1(B)(3)(C) Statement of Additional Material Facts

Defendant's Reply Exhibit 1, Documents Related to 2008-2009 Layoff

Defendant's Reply Exhibit 2, Excerpts from 2007-2012 CBA
between the City and AFSCME

Defendant's Reply Exhibit 3, Plaintiff's Answers to Interrogatories

Defendant's Reply Exhibit 4 – Ethan Baughy Work History

Defendant's Reply Exhibit 5 – Ahmed Almhana Work History

Defendant's Reply Exhibit 6 – Matthew Matti Work History

Defendant's Reply Exhibit 7 – Abdolreza Alemzadeh Work History

Defendant's Reply Exhibit 8 – Miguel Guzman Work History

Defendant's Reply Exhibit 9 – Hazem Zahdan Work History

Defendant's Reply Exhibit 10 – Syed Raheem Work History

Defendant's Reply Exhibit 11 – May 17, 2022 Declaration of Martin Wise

Defendant's Reply Exhibit 12 - Reschke Declaration

Defendant's Reply Exhibit 13 – Reschke Work History

Defendant's Reply Exhibit 14 – Excerpts from 2002 CBA between
AFSCME and City of Chicago

Defendant's Reply Exhibit 15 – Sharon Jackson Deposition Transcript

Defendant's Reply in Support of Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . .  Doc. # 108

Defendant City of Chicago's Motion for Leave to File Amended Corrected
Summary Judgment Materials Instanter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Doc. # 109

Plaintiff's Objection to Defendant's Motion for Leave to File Amended
Corrected Summary Judgment Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Doc. # 111

Minute Order Denying Defendant's Motion to Amend/Correct . . . . . . . . . . . . . . . . . .  Doc. # 115

## Certificate of Compliance

Pursuant to Circuit Rule 30 (a) and (b), all materials required by parts (a) and (b) of this

Circuit Rule are included in this appendix.

/s/ Deidre Baumann
_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TINKA VASSILEVA, | |
| Plaintiff, | |
| v. | No. 19-cv-04064 |
| CITY OF CHICAGO, | |
| Defendant. | Judge Franklin U. Valderrama |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tinka Vassileva (Vassileva), a Filtration Engineer (FE) for the City of Chicago (the City) brings this lawsuit[1] against the City alleging violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) *et seq.*; national origin and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and retaliation for filing administrative charges and *Vassileva I* under Title VII. R. 1, Compl.[2] Before the Court is the City's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. R. 83, Mot. Summ. J. For the reasons stated below, the Court grants the motion for summary judgment.

---

[1] This is Vassileva's second lawsuit against the City. The first-filed lawsuit is currently pending in front of the Honorable Ronald A. Guzman, Case No. 18-cv-4595 (*Vassileva I*). The Court refers to the instant lawsuit as *Vassileva II*, as appropriate.

[2] Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

**APPX. 1**

## Background

### I.    Local Rule 56.1 Statements and Responses

As an initial matter, the Court must address Vassileva's response to the City's Local Rule 56.1 statement of material facts and Vassileva's purported statement of additional material facts. R. 101 at 1, Pl.'s Resp. DSOF; R. 101 at 38, PSOAF.[3] When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(L.R. 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1(a)). The Local Rule 56.1 statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)).

Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and either admit each fact, or, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(2)–(3). "Asserted facts may be deemed admitted if not

---

[3]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for the City's Statement of Undisputed Material Facts (R. 85); "Pl.'s Resp. DSOF" for Vassileva's Response to the City's Statement of Undisputed Material Facts (R. 101 at 1); "PSOAF" for Vassileva's Additional Facts Requiring Denial of Summary Judgment (R. 101 at 38); and "City's Resp. PSOAF" for the City's Response to Vassileva's Statement of Additional Material Facts (R. 107). Vassileva has filed one document containing both her Response to the City's Statement of Undisputed Material Facts and her Statement of Additional Facts (R. 101).

2

controverted with specific citations to evidentiary material." *Id.*; *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019). If the non-moving party asserts additional facts not included in the moving party's statement of facts, the non-moving party is to file a statement of additional material facts "that attaches any cited evidentiary material not attached to the [moving party's statement of facts] or the non-moving party's response [thereto]." N.D. Ill. Local R. 56.1(b)(3). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019). Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts. "*Id.* at 415.

As the City points out in its Reply, many of Vassileva's denials to the City's statement of material facts fail to cite to any evidentiary material that controverts the asserted fact. R. 108, Reply at 6; *see* Pl.'s Resp. DSOF ¶¶ 61, 70, 76–77. Many of Vassileva's responses are also evasive and do not controvert the City's facts. Pl.'s Resp. DSOF ¶¶ 11, 20, 22, 24, 25, 38, 43–46, 58–60, 62, 64, 75. Further, certain denials contain improper argument. *Id.* ¶¶ 20–22, 32–33, 37–40, 45. In several instances, Vassileva improperly attempts to introduce additional facts in her purported denials of the City's facts. Pl.'s Resp. DSOF ¶¶ 5–6, 9–16, 18, 21–22, 24–25, 32–35, 37–40, 43–46, 48, 51–53, 55, 57, 58–64, 70, 72, 74, 76.

As a result, where Vassileva failed to respond to certain facts by offering admissible evidence of her own, the Court accepts as true the facts set forth in the City's Local Rule 56.1 statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg*, 919 F.3d at 411 (internal quotation marks omitted). The Court also will not consider any legal arguments or legal conclusions made in Vassileva's response to the City's statement of material facts. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts"); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (collecting cases disregarding or affirming the decision to disregard argumentative statements of fact). The Court strikes non-responsive additional facts from Vassileva's response to the City's facts. *Hare v. Zitek*, 414 F. Supp. 2d 834, 851 (N.D. Ill. 2005) (striking argumentative and non-responsive responses to statement of facts).

Additionally, as highlighted by the City, Vassileva, in her Response to the motion for summary judgment, frequently fails to cite to *any* facts from the record, and does not include any citation to the record after page seven of her Response. R. 100, Resp. at 7–15. As a result, the Court is left to guess at whether the assertion in Vassileva's Response brief is supported by any fact in the record. *See id.* A district court "cannot be expected to search through the entire record for evidence that may support a party's contention; a party must point to specific evidence that creates a genuine issue of material fact for trial." *Compania Administradora de Recuperacion v. Titan, Int'l., Inc.*, 533 F.3d 555, 562 (7th Cir. 2008). As recognized in *Hampton v.*

4

*County of Cook*, a plaintiff's "failure [to cite a statement of facts in a brief] puts an undue burden on the court to sift through mounds of paper to determine whether the record supports plaintiff's characterization of events." 2020 WL 6381366, at *1 (N.D. Ill. Oct. 31, 2020) (considering only plaintiff's factual assertions from plaintiff's Rule 56.1 statement that are supported by the record).

Vassileva's failure to comply with Local Rule 56.1 places an undue burden on this Court in trying to discern whether the "facts" contained in Vassileva's Response are, in fact, supported by anything in the record. Accordingly, the Court will only consider factual assertions from Vassileva's Response to the extent they are supported by proper citation to the record. *See also Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (affirming summary judgment and denying plaintiff's evidentiary challenges where district court struck new facts asserted by plaintiff in his (1) response to the employer's asserted facts, and (2) response brief opposing summary judgment, because district courts may enforce the local rules "strictly, but reasonably").

Further, throughout her Response to the City's statement of facts, and in support of her own statement of additional facts, Vassileva cites to a Declaration she filed as an Exhibit to her summary judgment filings. R. 95-2, Plaintiff's Ex. 7, Vassileva Decl. To the extent Vassileva's Declaration includes statements that lack a proper foundation for an assertion, or rely upon hearsay, the Court will not consider those statements. Vassileva Decl. ¶¶ 15, 17, 20, 21, 23, 28, 42, 43; *see, e.g., Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (finding portions of an affidavit not

5

based on personal knowledge to be speculative and lacking in foundation) (citing *Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir. 1998) (Affidavit testimony "that was necessarily speculative and lacking in foundation ... is insufficient.")).

However, to the extent that Vassileva has properly cited and authenticated statements of fact, the Court will consider them.

## II.    *Vassileva I*, *Vassileva II*, and Claim Splitting

As a preliminary matter, the City argues that Vassileva is improperly engaging in claim splitting in this lawsuit. R. 84, Memo. Summ. J. at 14–18. To provide some context for this argument, the Court outlines the claims of *Vassileva I* and the instant action.

### a.  Claims in *Vassileva I*

On July 2, 2018, Vassileva filed *Vassileva I* against the City alleging that the City discriminated against her based on her sex, age, and national origin when it did not allow her to "Act Up" as an FE III in 2018; did not allow her to attend training on February 26, 2018; and failed to promote her to FE V in November 2016 and December 2017. *Vassileva v. City of Chicago*, 2019 WL 5085717, at *4 (N.D. Ill. Oct. 10, 2019). "Acting Up" occurs when an "employee is directed to, and does perform or is accountable for substantially all the responsibilities of a higher-graded, covered Class" or job title within the same class of positions, *i.e.*, a FE II Acting Up to a FE III. DSOF ¶ 40. Vassileva further alleged that the City discriminated against her because of her sex and national origin by docking her for one day's pay in January

6

2017, and that the City retaliated against her for filing administrative charges with the Illinois Department of Human Rights (IDHR) by failing to allow her to Act Up, by failing to post a FE V vacancy, and by failing to train her. *Id.* at *6.

The City moved for summary judgment on all claims in *Vassileva I* on April 9, 2019. Case No. 18-cv-4595, R. 37, City's Mot. for Summ. J. in *Vassileva I*. Two months later, and a month prior to filing her response opposing summary judgment, Vassileva filed this lawsuit (R. 1). Case No. 18-cv-4595, R. 52, Vassileva's Resp. to City's Mot. for Summ. J. in *Vassileva I*.

On October 10, 2019, the *Vassileva I* court granted in part and denied in part the City's motion for summary judgment. *Vassileva v. City of Chicago*, 2019 WL 5085717 (N.D. Ill. Oct. 10, 2019). In so ruling, that court granted summary judgment to the City on Vassileva's retaliation claims,[4] discrimination claim on being docked one-day's pay, and failure to promote claim. *Id.* The court denied the City's summary judgment motion regarding Vassileva's failure to obtain approval for Acting Up claim, holding that "[v]iewing the evidence in a light most favorable to Plaintiff, she has provided sufficient facts from which a jury could conclude that she had been the victim of sex, age, and national origin discrimination relating to Defendant's failing

---

[4]The court construed Vassileva's allegation of the City pulling her out of training on February 28, 2018 as an allegation of retaliation, and held that Vassileva waived the argument of retaliation in her response. Addressing the allegation substantively, the court also held that Vassileva could not survive summary judgment because suspicious timing alone was insufficient to establish retaliation, and Vassileva failed to refute that the decisionmaker did not know about her protected activity, in any event. *Vassileva*, 2019 WL 5085717 at *6, n. 8.

to approve her to act up." *Id.* at \*5. That remaining claim in *Vassileva I* is scheduled for trial on February 12, 2024. Case No. 18-cv-4595, R. 148, Minute Entry.

### b. Claims In *Vassileva II*

The parties agree that Vassileva's allegations in this case concern events occurring after March 2018. Pl.'s Resp. DSOF ¶ 77; Resp. at 15; Reply at 3. The parties also agree on Vassileva's claims in this case, including national origin, sex, and age discrimination and retaliation for filing IDHR charges and *Vassileva I*, and, specifically: (1) a failed promotion to FE V in 2018; (2) a failed promotion to FE IV in 2019; (3) denial of FE III Acting Up opportunities from March 2018 – January 2019; (4) denial of FE III overtime from March 2018 – present; and (5) a written reprimand on June 6, 2018. Resp. DSOF ¶ 78.[5] In briefing the motion, the parties also submitted facts that relate to Vassileva's promotion to FE III in March 2019, which this Court will consider only as it impacts the analysis of the failure to promote claim for FE V in 2019. *E.g.*, Memo. Summ. J. at 5; Resp. 8–9.

### c. Claim Splitting

As Vassileva admits, her claims before March of 2018 are the subject of *Vassileva I.* Pl.'s Resp. DSOF ¶ 77. Nevertheless, in her Response, Vassileva brings

---

[5]To the extent Vassileva includes additional allegations in her FAC that she does not advance in her Response to the City's Motion, the Court will not consider them. *See, e.g.*, *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) (failure to introduce evidence or advance arguments during summary judgment proceedings results in waiver).

in allegations relating to *Vassileva I*, despite acknowledging the timeframe and relevant claims in this matter.[6] *See*, *e.g.*, Resp. at 9–14; Pl.'s Resp. DSOF ¶¶ 77–78.

The City argues that Vassileva is claim splitting certain claims by bringing claims relating to the City's decision denying her from Acting Up as an FE III in February 2018 in this matter, *e.g.,* denial of FE III Acting Up opportunities and overtime from March 2018 – present. Memo. Summ. J. at 14–16. In response, Vassileva states "the truth of the matter is that the court in *Vassileva I*, with the essential agreement of the parties, found that the only claims that would be considered in that case were those prior to March 2018. Plaintiff had no choice but to proceed in *Vassileva II* for those acts of discrimination occurring after March 2018." Resp. at 15. Thus, the parties agree, again, on the scope of the claims in this case.

A suit is duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *Scholz v. U.S.*, 18 F.4th 941, 951 (7th Cir. 2021) (internal citations omitted). Where a plaintiff brings a suit arising from the same transaction or events underlying a prior lawsuit, claim splitting has occurred. *Id.* To evaluate claim splitting, the Court looks to the (1) identity of the parties and (2) identity of the causes of action in the lawsuits. *Id.* Unlike claim

---

[6]Relatedly, Vassileva includes a litany of alleged past wrongs in terms of her career with the City and other failed promotions in her Response. However, before this Court is the employment actions from March 1, 2018 and after. Pl.'s Resp. DSOF ¶ 77. Accordingly, the Court will not consider those allegations concerning past actions, which are time-barred. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004) ("Any discrete discriminatory acts that fall outside the statute of limitations are time-barred even though they may relate to other discrete acts that fall within the statute of limitations.").

preclusion, claim splitting does not require a final judgment on the merits in the first filed lawsuit. *Id.*

Vassileva has sued the City in *Vassileva I* and *II*, and the identity of the parties in both lawsuits is the same. Moreover, in *Vassileva I* she asserts a claim of discrimination or retaliation against the City for its denial of FE III Acting Up in February 2018, and damages resulting from that decision. Here, Vassileva brings a claim of discrimination or retaliation against the City for its denial of FE III Acting Up Opportunities after February 2018, and denial of overtime with respect to FE III Acting Up Opportunities after February 2018, on the basis that she was excluded from Acting Up as an FE III in February 2018. Pl.'s Resp. DSOF ¶ 78. The City's decision to exclude Vassileva from Acting Up as an FE III in February 2018 is a claim in *Vassileva I*. Thus, although Vassileva has framed her claims slightly differently in this action, her claims that are derivative of the claim in *Vassileva I* of the City's denial of FE III Acting Up in February 2018 are barred by the doctrine of claim splitting. *Scholz*, 18 F.4th at 953–954 (internal citations omitted) (finding plaintiff's second filed suit barred by claim splitting where it contained substantially similar allegations across the same time period of the prior-filed suit, and where plaintiff was not permitted to "take another bite at the apple").

Further, to the extent Vassileva is confused and includes claims from prior to March 2018 in this matter, which she affirmatively agrees are the subject of *Vassileva I*, the Court will not consider them. *See id.* For example, Vassileva includes argument that she was denied training in February 2018, however, that claim was before Judge

Guzman, and the Court will not allow Vassileva to split her claim by re-evaluating that claim in this matter. *Cf.* PSOAF ¶¶ 34–40 *with Vassileva*, 2019 WL 5085717 at *3.

Finally, in this matter Vassileva re-alleges stray remarks (without a description of when the remark was made, who was present, or other pertinent details) made by various supervisors which she alleged in *Vassileva I* in her PSOAF ¶¶ 38–40. All of the stray remarks Vassileva alleges in her PSOAF were previously alleged in *Vassileva I*, and were considered by the court in its decision on the City's motion for summary judgment in that matter. *Vassileva*, 2019 WL 5085717 at *5; *see* Pl.'s Resp. DSOF ¶ 47. In this case, Vassileva has not identified stray remarks from any supervisors (or other personnel) in the period that concerns this lawsuit (March 2018 – present) except alleged comments made by Yadi Babapour (Iranian, male, 68) in or around April 2018 *regarding the February 2018 decision denying her Acting Up*, which she also previously alleged in *Vassileva I*, and which remains the subject of *Vassileva I. See* PSOAF ¶ 39; Vassileva, 2019 WL 5085717, at *5. In this matter, Vassileva also alleges Babapour made a comment that "some women prefer just to stay home" at an unspecified date and time in 2018, and that in January 2019 Babapour allegedly said to Vassileva "why don't you do what other engineers are doing, stupid." Pl.'s Resp. DSOF ¶ 48. However, Vassileva has not made any allegation that these purported comments were related to any adverse action where Babapour was a decisionmaker, or were made close in time to any adverse action alleged in this matter. *See* Pl.'s Resp. DSOF ¶ 68. Thus, Vassileva has not included

allegations that any stray remarks relate to the claims pending in this lawsuit, and therefore the Court will not consider Vassileva's re-alleged stray remarks relating to her *Vassileva I* claims.

## III.    Material Facts

The following facts are set forth favorably to Vassileva, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Vassileva's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed, to the extent the disputed facts are supported by record evidence. As detailed in Section I, *supra*, the Court will not consider denials of material facts where such denials are not supported by evidence.

### a.  Vassileva's Background and Employment with the City

Vassileva is a 56-year-old woman from Bulgaria. DSOF ¶ 1. She is a current City of Chicago employee. *Id.* Vassileva has a Master's Degree in Chemical Engineering, Bachelor's Degree in Chemical Engineering, and a Bachelor's Degree in pediatric nursing. PSOAF ¶ 1. Vassileva also holds a Public Water Operative License

Class A from the Environmental Protection Agency, and a certificate in project management from DeVry University. *Id.* ¶ 2.

With the exception of a brief layoff, Vassileva worked as a FE II for the City's Department of Water Management ("DWM") from approximately July 1, 2002 through June 30, 2019. DSOF ¶ 2. On July 1, 2019, at 54-years-old, Vassileva was promoted to FE III. Pl.'s Resp. DSOF ¶ 2. Vassileva has worked in the Mechanical, Instrumentation, Operations, and Chemical Inventory sections. PSOAF ¶ 4. She is a member of the American Federation of State, County and Municipal Employees (AFSCME) Local Council 31, Unit 4. Pl.'s Resp. Pl.'s Resp. DSOF ¶ 2.

Vassileva has had a number of supervisors throughout her employment: FE V Babapour; Engineer of Water Purification Ed Salinas (Mexican, male, 56); Deputy Commissioner John Pope (American, male, 53); and Managing Deputy Commissioner Alan Stark (American, male, 57). Pl.'s Resp. DSOF ¶¶ 7–8.

### b. Background of DWM's Bureau of Water Supply

The DWM is responsible for managing and supplying nearly 1 billion gallons of drinking water to Chicago residents and to 120 suburbs. DSOF ¶ 3. The Bureau of Water Supply (BWS) operates two water purification plants: (1) the Jardine Water Purification Plant (JWPP) and (2) the Sawyer Water Purification Plant (SWPP). The plants purify water from Lake Michigan, which involves drawing in water, removing impurities, filtering the water, chemically treating it, and transmitting the clean water to the City's pumping stations. *Id.* ¶ 5.

13

The City's Filtration Engineers are responsible for the daily operations of the JWPP and range from FE II – FE V. DSOF ¶ 11. The FE II position is entry level, and each higher-level FE position requires more experience, training, and skills. *Id.* The City contends that FE IIs do not supervise other employees, however, Vassileva disputes this fact based on her personal experience as an FE II by identifying examples of times she has supervised other employees in that role. Pl.'s Resp. DSOF ¶ 11; PSOAF ¶ 17. The City further contends that FE IIIs, FE IVs, and FE Vs supervise subordinate FEs as part of their essential job functions. DSOF ¶¶ 11–13.

### i. FE V Promotion (June 2018)

Martin Wise, the City's Department of Human Resources Recruiter, was responsible for reviewing applications for the FE V position and creating a referral list of applicants. *Id.* ¶¶ 19–20. In processing applications for the FE V position, Wise deemed all FE IIs unqualified and ineligible to interview for the FE V position. *Id.* ¶¶ 20, 23–24. This included Vassileva and two other FE IIs. *Id.* The City's reason for finding the FE IIs ineligible was that pursuant to Department of Human Resources rules, the City only counted supervisory experience performed while in a position that supervises as an essential job function toward the one year minimum, and that FE IIs do not supervise as an essential job function. *Id.* ¶ 25. The candidates selected by Wise for interviews were all FE IVs at the time of their applications and had been in the FE IV role for a significant period of time, and the individual promoted into the role was an FE III from 1998 – 2015, at which time he became an FE IV. *Id.* ¶ 27.

Vassileva states that Wise permitted her to interview for a FE V position in 2016, and that the qualifications with respect to training and experience listed for the FE V position in 2018 were identical. PSOAF ¶ 16. Accordingly, Vassileva asserts that Wise's reasons for finding she was not qualified for the FE V position in 2018 were false. *Id.* ¶ 18.

Vassileva acknowledges that the individuals that Wise determined met minimum qualifications for the position all held FE IV positions and were older than Vassileva. Pl.'s Resp. DSOF ¶ 20. At the time, Jacek Wroblewski was an FE IV (age 54, male, unknown national origin), David Keon was an FE IV (age 54, male, unknown national origin), and Chamoon Anawes was an FE IV (age 56, male, unknown national origin), when Vassileva was an FE II and 53 years old at the time of the application. *Id.* Vassileva does not challenge the veracity of the contents of the referral list prepared by Wise, except to improperly speculate, without citation to admissible evidence, that Wise "intentionally omitted Plaintiff from the list although aware that she met the minimum qualifications." *Id.* Of the candidates selected for interviews, the most senior candidate, Wroblewski, was selected to fill the one available vacancy. DSOF ¶ 27. It is undisputed that Wroblewski had more seniority than Vassileva based on their hire dates. Pl.'s Resp. DSOF ¶¶ 2, 27. It is also uncontested that Wroblewski, Keon, and Anawes were deemed "pre-qualified candidates" by Wise, and that pre-qualified candidates are hired in order of seniority. *Id.* ¶¶ 20–21, 27.

### ii.  FE III Promotion (March 2019)

In 2019 Vassileva applied for and was selected to interview for a FE III vacancy. DSOF ¶ 33. Seven eligible candidates interviewed for the position. *Id.* Vassileva and two other candidates, Matthew Matti (male, 38) and Syed Raheem (male, 66) were hired and started working as FE IIIs on July 1, 2019. *Id.*

The four other candidates that interviewed submitted "bid waivers" and waived their selection for an FE III position. *Id.* ¶ 34. On the bid waiver, each of those candidates indicated, in their own words, that they would like to remain eligible for other job opportunities in the next six months, therefore taking themselves out of consideration for the FE III positions. *Id.* Pursuant to the relevant ASFCME contract, "a successful bidder may not bid for another Employer determined permanent vacancy for six (6) months." *Id.*

Vassileva states that the interviewer, Sharon Jackson, shared with these applicants that FE IV positions may be available, and she did not share that information with Vassileva. PSOAF ¶ 24. Vassileva contends she would have waived her selection for an FE III position had she been provided with this information. *Id.*

### iii.  FE V Promotion (June 2018)

On July 3, 2019 the City posted a bid announcement for six FE IV positions. DSOF ¶ 36. Wise reviewed applications from 13 individuals, which included Vassileva, Matti, and Raheem, and created a list of eligible candidates. *Id.* ¶¶ 37–38. Vassileva, Matti, and Raheem, pursuant to the AFSCME contract provisions on bidding, were not deemed eligible for the FE IV positions by Wise because they had

successfully bid for the FE III position within six months of submitting the bids for FE IV position. *Id.*

### iv. Acting Up Opportunities (March 2018 – January 2019)

"Acting Up" is "an employment action where an employee is directed to, and does perform, or is held accountable for, substantially all of the responsibilities of a higher-graded [job title]." *Id.* ¶ 40. For an employee to be eligible to "act up," they must have the present ability to perform the duties of the job title. *Id.* For City employees that want to "act up," they submit an annual request. *Id.* ¶ 42.

In February 2018, Salinas reviewed Acting Up requests by FEs to determine Acting Up eligibility for the remainder of 2018. *Id.* ¶¶ 7, 44. Salinas determined that Vassileva and Matti were ineligible for Act Up as FE IIIs in 2018. *Id.* ¶¶ 44–45, 79. BWS used the April 2018 Acting Up list until January 2019. *Id.* ¶ 46.

As discussed in Section II(c), *supra*, the denial of Vassileva's Acting Up in February 2018 is the remaining claim in *Vassileva I. Id.* ¶ 77. BWS did not review Acting Up eligibility again until December 2018. *Id.* ¶ 46. At that point, both Vassileva and Matti were deemed eligible to begin Acting Up as FE IIIs. *Id.*

### v. Overtime (March 2018 – Present)

Vassileva's overtime claim also relates to the City's decision that Vassileva was ineligible to Act Up as FE III in February 2018, and she was therefore not included on the FE III overtime list until she was deemed eligible to Act Up beginning in January 2019. *Id.* ¶¶ 44–46, 51. Vassileva was placed on the FE III callout list beginning on January 25, 2019, but was not permitted to Act Up as an FE III prior

17

to that date because an FE cannot be on the FE III callout list unless they are deemed qualified to Act Up as an FE III. *Id.* ¶¶ 51–53. Vassileva did not identify any days since January 2019 that she alleges she was unfairly denied overtime, thus placing her overtime claim squarely as a result of the City's denial of her FE III Acting Up eligibility in February 2018. *Id.* ¶ 52.

### vi. Written Reprimand (June 6, 2018)

On June 6, 2018, Vassileva was issued a written reprimand for insubordination. *Id.* ¶ 54. The reason for the written reprimand was Vassileva's refusal to leave a training session held on February 26, 2018. *Id.* ¶ 54. Vassileva's claim that the City had discriminated against her when she was asked to leave the training is the subject of *Vassileva I. Id.* ¶ 77; *Vassileva*, 2019 WL 5085717 at *4.

### c. Administrative Charges

Vassileva has filed several administrative charges alleging discrimination against the City. Pl.'s Resp. DSOF ¶ 69. For purposes of this the present motion for summary judgment, the relevant charge is that filed on June 11, 2018, which Vassileva attached to her Amended Complaint. R. 10-1, Charge of Discrimination. In her charge, Vassileva alleged discrimination based on national origin (Bulgarian), age, and sex, as well as retaliation. *Id.*

Wise, on the other hand, testified that he was not aware of Vassileva's IDHR charges or lawsuits, or internal complaints to DWM, until he was notified of the April 16, 2019 fact-finding conference for the June 2018 charge in approximately March 2019. *Id.* ¶ 75. Vassileva does not dispute this with any record evidence, instead

speculating that Wise "was most likely aware," which this Court necessarily disregards as unsupported. *See* Pl.'s Resp. DSOF ¶ 75.

Importantly, the Court will only consider events occurring from March 2018 onward, as Vassileva is not advancing any hostile work environment claim, and has pled discrete acts of employment discrimination. *Lucas*, 367 F.3d at 723.[7]

Therefore, Vassileva's remaining claims in this lawsuit include national origin and sex discrimination claims under Title VII, retaliation under Title VII, and a claim under the ADEA based on the above actions. The City's motion for summary judgment is before the Court. Mot. Summ. J.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in

---

[7]The previous court dismissed Vassileva's hostile work environment claim. R. 20, Minute Entry of Judge Gary Feinerman.

support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (internal quotation marks and citations omitted). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Vassileva alleges that the City discriminated against her on the basis of her national origin, sex, and age when it failed to promote her to FE V in 2018, failed to promote her to FE IV in 2019, denied her FE III Acting Up opportunities between March 2018 and January 2019, denied her FE III overtime from March 2018 to the present, and issued a written reprimand on June 6, 2018. Pl.'s Resp. DSOF ¶ 78; FAC Count II. Vassileva further alleges that the City retaliated against her for filing charges of discrimination and filing *Vassileva I*. Pl.'s Resp. DSOF ¶ 78; FAC Count I.

### A. Discrimination Based On Age, National Origin, or Sex (Count II)

Vassileva styled her discrimination claim based on age, national origin, and sex as one claim brought under Title VII. FAC Count II. Vassileva's discrimination claim, to the extent it is brought based on an age claim, is analyzed under the ADEA, and not Title VII. However, the Seventh Circuit has instructed that the same overall

analysis applies to claims brought under Title VII and the ADEA. *Gray v. Arrow Elecs., Inc.*, 2019 WL 1399945, at *3 (N.D. Ill. Mar. 28, 2019) (citing *David v. Bd. of Tr. of Cmty. Coll. Dist. No., 508*, 846 F.3d 216, 225 (7th Cir. 2017) and *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)). For that reason, this Court analyzes Vassileva's age claim under the same framework as her Title VII claims based on national origin and gender. *See id.*

The ADEA and Title VII make it unlawful for an employer to take adverse employment action against an individual because of the individual's age, national origin, sex, or other protected characteristic. A plaintiff can prove a discrimination claim under either statute using direct or indirect method of proof. *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014). In recent years, however, the Seventh Circuit has moved away from—while not abandoning completely—these two methods, instead instructing that, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence." *Ortiz*, 834 F.3d at 765. The ultimate question, then, is whether there is evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.*; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (assessing the evidence in an ADEA claim by applying *Ortiz*).

To survive summary judgment, Vassileva must adduce evidence suggesting that her protected characteristic was a reason for the adverse employment action. *See id.*[8]

Vassileva does not identify direct evidence of discrimination based on her age, national origin, or sex in the employment actions or decisions she brings in this action, and for this reason the Court analyzes her claims using the familiar burden-shifting *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Rooney v. Koch Air, LLC*, 410 F.3d 376, 380 (7th Cir. 2005). Under that framework, to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she was in a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger, male, or non-Bulgarian employees were treated more favorably. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771–72 (7th Cir. 2002); *see also Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005).

If the plaintiff meets that burden, then the employer must "set forth a legitimate nondiscriminatory reason for the adverse employment action which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment actions." *Nichols v. Southern Illinois University-Edwardsville*, 510 F. 3d 772, 783 (7th Cir. 2007). "If the employer satisfies its burden, the burden shifts back to the plaintiff to prove that the proffered reason was pretextual." *Walker v. Glickman*, 241 F.3d 884, 889 (7th Cir. 2001). Pretext is defined

---

[8]For an age discrimination claim, the standard is even higher, and plaintiff must establish that "but for his age, the adverse action would not have occurred." *Phillipson v. Wolf*, 831 F. App'x 212, 216 (7th Cir. 2020) (internal citations omitted).

as "a dishonest explanation, a lie, rather than an oddity or an error." *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). To establish pretext, the plaintiff must show either that the employer was motivated by a discriminatory reason or that the proffered reason is "unworthy of credence." *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675–676 (7th Cir. 2003).

An adverse employment action under the ADEA, or under Title VII, is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008) (internal quotations and citation omitted); *see also Duncan v. Thorek Meml. Hosp.*, 784 F. Supp. 2d 910, 920 (N.D. Ill. 2011).

The Court analyzes each action challenged by Vassileva below.

### a. **Failure to Promote (FE V – 2018)**

To establish a *prima facie* case for failure to promote, Vassileva must produce evidence that (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the City promoted someone outside of the protected class who was not better qualified for the position, or who had similar or lesser qualifications. *Outley v. City of Chicago*, 354 F. Supp. 3d 847, 863 (N.D. Ill. 2019). It is undisputed Vassileva was a member of a protected class, and was rejected for the FE V position, however, Vassileva has failed to produce evidence that she was qualified for the position or that the individual hired for the position was not better qualified/had similar or lesser qualifications. *See id.*

Although Vassileva describes, in detail, circumstances surrounding her lack of promotions, Vassileva fails to point to any evidence supporting a discriminatory motive relating to the City's failing to promote her. Vassileva's conjecture that she should have been eligible for promotions but was not based on the City's explanation that her FE level she held at the time (FE II) rendered her ineligible, does not transform that decision on her eligibility to one based on a discriminatory motive.

Vassileva does not dispute that Wise received and processed applications for the FE V position in 2018, and essentially screened applicants to create a bid list. Pl.'s Resp. DSOF ¶¶ 19–20. Nor does Vassileva dispute that Wise put together a referral list of the applicants. *Id.* Instead, Vassileva contends that Wise incorrectly found Vassileva not to meet the minimum qualifications for the position. *Id.* ¶ 20.

However, the City, in its discretion, is able to set its own eligibility standards subject to its rules and the relevant Collective Bargaining Agreements. In its discretion, the City, through Wise, determined that all FE IIs that applied for the position, including Vassileva, did not meet the minimum requirements for the FE V position, in part because FE IIs were entry level and did not supervise employees as an essential job function. DSOF ¶¶ 11, 23–24. That the City may have had different criteria for eligibility for this FE position in the past is of no consequence.[9] Further, that Wise previously determined Vassileva was qualified for a FE V position in

---

[9]For example, Vassileva also includes an allegation that she and John Ellis (also an FE II, male, age 66, national origin unknown) were eligible to interview for a FE V position in 2016. Vassileva does not allege, however, that, for example, Ellis was eligible to interview for the FE V or FE IV position and she was not. PSOAF ¶ 18; *Vassileva*, 2019 WL 5085717, at *5 (listing John Ellis' age as 66).

2016—when she was female, over 40, and Bulgarian—counsels against any inference that Wise's decision later finding her ineligible in 2018 was based on any discrimination based upon those characteristics. In any event, the City's referral list created by Wise confirmed that each applicant that was an FE II at the time of their application, including similarly situated employees outside of Vassileva's protected classes, including FE II Maruja Yoshimura (female, 30 years old, unknown national origin), and FE II Ethan Baugley (male, 28 years old, unknown national origin), were all deemed ineligible because each of their applications did not meet the required minimum qualifications. *Id.* ¶ 20.

Moreover, even if Vassileva could establish she was qualified for the position, Vassileva has not adduced evidence that the individual selected for the role had the same or lesser qualifications than she did, and for this independent reason her claim fails. *Outley*, 354 F. Supp. 3d at 863. It is undisputed that the employee selected to fill the vacancy, Wroblewski, who is older than Vassileva, and a male with unknown national origin, was an FE IV since 2015, had worked as an FE III for nearly 17 years before that, and had more seniority than Vassileva based on his hire date. Pl.'s Resp. DSOF ¶¶ 2, 27. FE IVs also had supervisory responsibility over lower FE positions. DSOF ¶ 13. Vassileva has not argued, much less produced evidence, that she had greater qualifications than Wroblewski, just that had she been placed on the referral list, she would have been second most senior to Wroblewski. Pl.'s Resp. DSOF ¶ 39. Yet Vassileva admits Wroblewski was selected to fill the one available vacancy, conceding there was no second vacancy. *Id.* ¶ 27.

Thus, Vassileva's failure to promote claim based on the FE V position in 2018 fails.

### b. Failure to Promote (FE IV – 2019)

The City next argues, as a threshold matter, that Vassileva's failure to promote claim for the FE IV position in 2019 was not administratively exhausted. Memo. Summ. J. at 12. Specifically, Vassileva filed her IDHR charge on June 18, 2018, the year *before* this promotion attempt in 2019, and it is not therefore included in her allegations in that 2018 IDHR charge attached to her FAC. Pl.'s Resp. DSOF ¶ 71. That charge did not (and could not have) included this allegation from the following year. *See id.* For discrete acts of an employer such as a failure to promote, Vassileva was required to file a timely charge with an administrative agency. *EEOC National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Vassileva fails to respond to this argument in her Response. The Court agrees with the City that "[f]ailure to respond to an argument … results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Therefore, Vassileva has waived any argument in opposition. Vassileva's failure to respond, however, is of no matter, because ultimately it is the City's burden of proof to establish it is entitled to judgment as a matter of law on this failure to promote claim.

The Court finds the City has met its burden. There is no evidence in the record that Vassileva filed any charge with any administrative agency regarding the 2019 failure to promote claim. Since failure to promote is a discrete act, Vassileva was required to file a charge with an administrative agency regarding that act prior to

filing any lawsuit on that basis. *EEOC National R.R. Passenger Corp.*, 536 U.S. at 114 (finding only acts occurring 300 days before the filing of a charge were actionable). Accordingly, the Court finds that Vassileva's failure to promote claim for the FE IV position in 2019 was not administratively exhausted, and thus is not properly before this Court.

### c. Denial of FE III Acting Up Opportunities (March 2018 – January 2019)

As discussed in Section II(c), *supra*, this claim is derivative of Vassileva's pending, remaining claim in *Vassileva I* that the City's decision denying her Acting Up in February 2018 was discrimination based on her national origin, sex, or age. To evaluate this claim, the Court would necessarily need to examine the circumstances of the City's denial of Vassileva's FE III Acting Up eligibility (e.g., there is no occasion to examine denial of Acting Up opportunities *unless* Vassileva was deemed eligible for those opportunities in the first place, which she was not, and which she is contesting in *Vassileva I*). That issue is before Judge Guzman, and this Court declines to consider it again in this case in violation of claim splitting principles.[10] *See Scholz*, 18 F.4th at 951.

That leaves the Court with Vassileva's allegation that the City should have returned her to the FE III Acting Up rotation schedule before January 2019. Resp. at

---

[10]Further, if Vassileva is successful in *Vassileva I*, she would be entitled to seek to recover damages relating to the denial of Acting Up in February 2018, as detailed in the *Vassileva I* court's minute entry dated October 25, 2021: "The only evidence Plaintiff may seek to admit regarding lost wages is that attributable to Defendant's alleged failure to allow Plaintiff to act up in 2018." Case No. 18-cv-04595, R. 104. Thus, denial of this claim does not prejudice Vassileva.

27

11–12. Vassileva alleges there was a 90-day rotation but has not cited any record evidence to support this contention except her own Declaration. The Court finds Vassileva lacks a foundation to offer this contention. PSOAF ¶ 33. Vassileva does not identify any evidence to support this allegation despite her personal belief that she should have been reconsidered; she even cites to the Declaration of Babapour wherein he affirmed that "BWM used the list created in April 2018 of FEs who were eligible to act up FEs until January 2019" and the Declaration of Salinas where he affirmed "[a]fter determining which FE IIs could act up as FE IIIs as needed in February 2018, I did not review acting up eligibility for FEs again until December 2018." PSOAF ¶ 33; R. 85-11, Babapour Decl. ¶ 14; R. 85-8, Salinas Decl. ¶ 21. Thus, the admissible record evidence Vassileva does cite to supports the City's position that no one was re-evaluated to Act Up as an FE III during this period. *Id.* Further, it is undisputed that Acting Up requests could be submitted on an annual basis. Pl.'s Resp. DSOF ¶ 42.

That the City did not treat Vassileva differently to reconsider her Acting Up on a different timeline than all other City employees is not evidence of discrimination, it is evidence of treating employees the same. In fact, Vassileva has not identified anyone that was reconsidered for Acting Up as an FE III (or otherwise) in the March 2018–January 2019 timeframe, conceding that the April 2018 list was used until January 2019, and admits she was eventually re-assessed, deemed eligible, and began Acting Up as an FE III in January 2019. *See* Pl.'s Resp. DSOF ¶¶ 45-46. Thus, Vassileva has failed to identify any similarly situated employees who were treated

28

differently for purposes of this claim, and Vassileva has not alleged discrimination based on national origin, sex, or age in connection with this claim, either.

### d. Denial of FE III Overtime (March 2018–Present)

As discussed in Section II(c), *supra*, this claim is also derivative of Vassileva's pending, remaining claim in *Vassileva I*, and barred by claim splitting. *Scholz*, 18 F.4th at 951. Further, as the City argues and supports, Vassileva did not identify any days after she was deemed eligible to Act Up in January 2019 that she alleges she was unfairly denied overtime. DSOF ¶ 52. Therefore, there is no independent claim for overtime outside of the City's decision that she was ineligible to Act Up as an FE III in February 2018. *See id.*

As the City points out, Vassileva has failed to respond to the City's argument regarding her overtime claim and has waived any argument. Reply at 15; *see Bonte*, 624 F.3d at 466. Waiver aside, ultimately it is the City's burden of proof to establish it is entitled to judgment as a matter of law on this overtime claim. The Court agrees with the City. For one, any purported overtime claim relating to the City's decision not to allow Vassileva to Act Up as an FE III in February 2018 is a claim being litigated in *Vassileva I*. Two, the Court finds that Vassileva has not adduced evidence of any overtime claims unrelated to the decision of the City not to allow her to Act Up as an FE III in February 2018, and for this reason this claim also fails.

### e. Written Reprimand (June 2018)

A written reprimand, standing alone, does not automatically constitute an adverse action. *See Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) ("Absent some

tangible job consequence accompanying [an employer's] reprimands, we decline to broaden the definition of adverse employment action to include them."); *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) (oral and written reprimands on their own are not adverse employment actions), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016); *see also Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Vassileva proffers no evidence showing that the June 6, 2018 written reprimand resulted in a "tangible job consequence," such as a reduction in pay or benefits. *Sweeney*, 149 F.3d at 556. Thus, the written reprimand is not a materially adverse action, and Vassileva's claim on this basis fails.

For these reasons, the Court grants summary judgment on Count II.

**B. Retaliation Under Title VII (Count I)**

"To make out a *prima facie* case for retaliation under Title VII, a plaintiff must show that a reasonable jury could find that (1) [she] engaged in statutorily protected activity; (2) [her] employer took a materially adverse action against [her]; and (3) the adverse action was caused by the protected activity." *Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) (internal citation omitted). If a plaintiff establishes a prima facie case of retaliation, the Court then engages in the *McDonnell Douglas* burden-shifting analysis. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

Before turning to the merits of Vassileva's retaliation claim, the Court notes that Vassileva agrees with the City that the purported retaliation claim pending in this matter relates to her filing IDHR charges and *Vassileva I*. Pl.'s Resp. DSOF ¶ 78.

The relevant IDHR charge is the one Vassileva attached to her First Amended Complaint, which was filed in June 2018. The City admits that Vassileva filing IDHR charges, and filing *Vassileva I*, is protected activity. Memo. Summ. J. at 19. The City argues instead that Vassileva cannot establish causation between the protected activity and the actions she purports are adverse employment actions. *Id.* Surprisingly, in her Response, Vassileva does not substantively respond to the City's arguments regarding retaliation and has therefore waived any argument. *See Bonte*, 624 F.3d at 466. But again, Vassileva's failure to respond is of no import because ultimately it is the City's burden of proof to establish it is entitled to judgment as a matter of law on her retaliation claim.

The City has again met its burden. Specifically, as the Court has discussed, the City has argued and established that (i) Vassileva was not qualified for the FE V position; (ii) Wise, as decisionmaker, was not aware of Vassileva's protected activity when he made the decision to exclude her from the bid list for the FE V position; (iii) Vassileva has not adduced any evidence of retaliatory animus with respect to the City deeming her ineligible to bid for the FE IV position; (iii) Salinas was not aware of Vassileva's protected activity until after she filed *Vassileva I*, which occurred after the written reprimand was issued on June 6, 2018; and (iv) the City did not evaluate *any employee* for Acting Up eligibility after February 2018 until January 2019. Memo. Summ. J. at 19–20; Reply at 20–22. These findings undercut, fatally, Vassileva's retaliation claim. Finally, a written reprimand is not – on its own – sufficient to

establish a materially adverse action, as discussed in Section A(e), *supra*, and

Vassileva failed to adduce any evidence to suggest it was a materially adverse action.

For these reasons, the Court also grants summary judgment on Count I.

## Conclusion

For the foregoing reasons, the City's motion for summary judgment [83] is

granted. Civil case terminated.


Dated: March 14, 2022

_____
United States District Judge
Franklin U. Valderrama

**F I L E D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

APR 06 2023 *yrm*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **TINKA VASILLEVA,** | ) |
| | ) |
| **Plaintiff,** | ) **Case No. 1:19-cv-04064** |
| | ) |
| **vs.** | ) **Hon. Franklin U. Valderrama** |
| | ) |
| **CITY OF CHICAGO, a municipal** | ) **Hon. Magistrate Fuentes** |
| **corporation,** | ) |
| | ) |
| **Defendants.** | ) |

### NOTICE OF APPEAL

Notice is hereby given that, TINKA VASILLEVA, Plaintiff in the above-captioned case,

hereby appeals to the United States Court of Appeals for the Seventh Circuit from all aspects of

the final order entered on March 14, 2023, granting Defendant's Motion for Summary Judgment,

in favor of the Defendant, CITY OF CHICAGO, and against the Plaintiff, TINKA VASSILEVA,

as well as all prior orders entered in favor of the Defendant, CITY OF CHICAGO, and against

Plaintiff, TINKA VASSILEVA.

Respectfully submitted,

04/06/2023

TINKA VASILLEVA, *Pro se*

Tinka Vassileva
530 N. Lake Shore Drive Unit # 1102
Chicago, IL. 60611
Telephone number: 773-791-1408
e-mail address: tinka.vassileva@gmail.com

**P A I D**
RECEIPT # *46242B4688*

APR 06 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**APPX. 2**