No. 23-1679

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

TINKA VASSILEVA,

Plaintiff-Appellant,

    v.

CITY OF CHICAGO,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 19-cv-04064
The Honorable Franklin U. Valderrama, Presiding
————

## BRIEF OF DEFENDANT-APPELLEE
————

MARY B. RICHARDSON-LOWRY
Corporation Counsel
of the City of Chicago
2 N. LaSalle Street, Suite 580
Chicago, Illinois 60602
(312) 742-4961

MYRIAM ZRECZNY KASPER
  Deputy Corporation Counsel
SUZANNE M. LOOSE
  Chief Assistant Corporation Counsel
DANIEL E. ALPERSTEIN
  Assistant Corporation Counsel
  Of Counsel

# TABLE OF CONTENTS

———

Page

JURISDICTIONAL STATEMENT ............................................................. 1

ISSUES PRESENTED ............................................................................... 1

STATEMENT OF THE CASE ................................................................... 1

SUMMARY OF ARGUMENT .................................................................... 7

ARGUMENT .............................................................................................. 8

I.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
      JUDGMENT ON VASSILEVA'S DISCRIMINATION CLAIMS. .............. 9

      A.    Summary Judgment Was Proper On Vassileva's Claim Of
            Failure To Promote To FE V In 2018. ..................................... 11

            1.    McDonnell Douglas approach. ..................................... 11

            2.    Direct or circumstantial evidence approach. .................... 15

      B.    Summary Judgment Was Proper On Vassileva's Claim Of
            Failure To Promote To FE IV In 2019. ................................... 19

      C.    Summary Judgment Was Proper On Vassileva's Claim Of
            Denial Of Acting Up And Overtime Opportunities. .................. 22

II.   THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
      JUDGMENT ON VASSILEVA'S RETALIATION CLAIMS. ................... 27

      A.    Summary Judgment Was Proper On Vassileva's Claim That The
            Failure To Promote Her To FE V In 2018 Was Retaliatory. ...... 28

      B.    Summary Judgment Was Proper On Vassileva's Claim That The
            Failure To Promote Her To FE IV In 2019 Was Retaliatory. ..... 31

CONCLUSION .......................................................................................... 32

# TABLE OF AUTHORITIES

———

| CASES | Page(s) |
|---|---|

Allen-Noll v. Madison Area Technical College,
969 F.3d 343 (7th Cir. 2020) .................................................................. 8

Arrigo v. Link,
836 F.3d 787 (7th Cir. 2016) ................................................................ 24

Beardsall v. CVS Pharmacy, Inc.,
953 F.3d 969 (7th Cir. 2020) .................................................................. 8

Brooks-Ngwenya v. Indianapolis Public Schools,
564 F.3d 804 (7th Cir. 2009) ................................................................ 25

Cervantes v. Ardagh Group,
914 F.3d 560 (7th Cir. 2019) .................................................... 20, 29, 32

Collins v. American Red Cross,
715 F.3d 994 (7th Cir. 2013) ................................................ 14, 17, 18

Cooper v. Retrieval-Masters Creditors Bureau, Inc.,
42 F.4th 688 (7th Cir. 2022) ................................................................ 24

David v. Board of Trustees of Community College District No. 508,
846 F.3d 216 (7th Cir. 2017) ................................................................ 10

Driveline Systems, LLC v. Arctic Cat, Inc.,
936 F.3d 576 (7th Cir. 2019) .................................................................. 8

Enigwe v. Amazon.com Services LLC,
No. 23-2431, 2024 WL 1342576 (7th Cir. Mar. 29, 2024) .............................. 23

Greenbank v. Great American Assurance Co.,
47 F.4th 618 (7th Cir. 2022) ........................................... 19, 27, 31, 32

Griffin v. Bell,
694 F.3d 817 (7th Cir. 2012) ................................................................ 20

Guaranty Bank v. Chubb Corp.,
538 F.3d 587 (7th Cir. 2008) .................................................................. 5

iii

Hackett v. City of South Bend,
    956 F.3d 504 (7th Cir. 2020)................................................................. 20, 24, 31

Hasham v. California State Board of Equalization,
    200 F.3d 1035 (7th Cir. 2000)............................................................................. 16

Hudson v. Chicago Transit Authority,
    375 F.3d 552 (7th Cir. 2004)......................................................................... 17, 29

Igasaki v. Illinois Department of Financial & Professional Regulation,
    988 F.3d 948 (7th Cir. 2021)....................................................................passim

Johnson v. Advocate Health & Hospitals Corp.,
    892 F.3d 887 (7th Cir. 2018)................................................................................. 9

Khungar v. Access Community Health Network,
    985 F.3d 565 (7th Cir. 2021)................................................................... 29, 30, 32

Kilburn-Winnie v. Town of Fortville,
    891 F.3d 330 (7th Cir. 2018)............................................................................... 25

King v. Ford Motor Co.,
    872 F.3d 833 (7th Cir. 2017)............................................................................... 29

Leisen v. City of Shelbyville,
    153 F.3d 805 (7th Cir. 1998)............................................................................... 14

Mach v. Will County Sheriff,
    580 F.3d 495 (7th Cir. 2009)............................................................................... 16

Madlock v. WEC Energy Group, Inc.,
    885 F.3d 465 (7th Cir. 2018)......................................................................... 28, 29

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)....................................................................................... 5, 9

Mollet v. City of Greenfield,
    926 F.3d 894 (7th Cir. 2019)............................................................................... 28

National Railroad Passenger Corp. v. Morgan,
    536 U.S. 101 (2002)................................................................................... 20, 32

Ortiz v. Werner Enterprises, Inc.,
    834 F.3d 760 (7th Cir. 2016)................................................................................. 9

iv

Palka v. City of Chicago,
    662 F.3d 428 (7th Cir. 2011) .............................................................. 25

Petts v. Rockledge Furniture LLC,
    534 F.3d 715 (7th Cir. 2008) ............................................. 9, 16, 22, 30

Platinum Supplemental Insurance, Inc. v. Guarantee Trust Life Insurance Co.,
    989 F.3d 556 (7th Cir. 2021) .............................................................. 23

Purtue v. Wisconsin Department of Corrections,
    963 F.3d 598 (7th Cir. 2020) ......................................... 10, 11, 14, 16

Riley v. Elkhart Community Schools,
    829 F.3d 886 (7th Cir. 2016) .................................................. 10, 11, 13

Rodrigo v. Carle Foundation Hospital,
    879 F.3d 236 (7th Cir. 2018) .............................................................. 14

Scholz v. United States,
    18 F.4th 941 (7th Cir. 2021) .............................................................. 25

Schuster v. Lucent Technologies, Inc.,
    327 F.3d 569 (7th Cir. 2003) ....................................................... 17, 18

Skiba v. Illinois Central Railroad Co.,
    884 F.3d 708 (7th Cir. 2018) ................................................... 9, 17, 30

United States v. Doyle,
    121 F.3d 1078 (7th Cir. 1997) .............................................................. 5

Vassileva v. City of Chicago,
    No. 1:18-cv-4595 (N.D. Ill.) ........................................................... 4, 24

Vassileva v. City of Chicago,
    No. 1:24-cv-00249 (N.D. Ill.) ................................................... 5, 23, 27

Vichio v. US Foods, Inc.,
    88 F.4th 687 (7th Cir. 2023) .............................................................. 10

Williams v. Office of Chief Judge,
    839 F.3d 617 (7th Cir. 2016) .............................................................. 16

<u>Zaccagnini v. Charles Levy Circulating Co.</u>,
338 F.3d 672 (7th Cir. 2003)........................................................................................ 18

**STATUTES**

29 U.S.C. § 623(a) ........................................................................................................ 4

42 U.S.C. § 2000e ........................................................................................................ 4

42 U.S.C. § 2000e-2(a)(1) ........................................................................................... 9

42 U.S.C. § 2000e-3(a) .............................................................................................. 27

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ..................................................................................................... 8

# JURISDICTIONAL STATEMENT

————

The jurisdictional statement of plaintiff-appellant Tinka Vassileva is complete and correct.

# ISSUES PRESENTED

——

1.      Whether the district court properly granted summary judgment to the City of Chicago on Vassileva's discrimination claims.

2.      Whether the district court properly granted summary judgment to the City on Vassileva's retaliation claims.

# STATEMENT OF THE CASE

——

Vassileva has worked as a Filtration Engineer (FE) in the City's Department of Water Management (DWM) since 2001. R. 107 at 1-2 (¶ 3). FEs are responsible for the daily operations of the Jardine Water Purification Plant, which supplies drinking water to Chicago and suburban residents. R. 85-5 at 1 (¶ 3); R. 85-8 at 3 (¶ 8). FE positions range from FE II, an entry-level position, up to FE V, a supervisory position. R. 85-8 at 3 (¶¶ 8-11). Vassileva held the FE II position until July 2019, when she was promoted to FE III. R. 85-3 at 1.

### 2018 FE V Promotion

On April 12, 2018, DWM posted an opening for a vacant FE V position. R. 85-15 at 12. Martin Wise, a recruiter for the City's Department of Human Resources, was responsible for reviewing applications for the FE V position and creating a list of applicants eligible to interview for the position. Id. at 1-2 (¶¶ 2-4). Vassileva and

seven other employees applied for the open position. Id. at 2-3 (¶ 6). In processing these applications, Wise deemed all FE II applicants – including Vassileva – ineligible to interview. Id. at 3-4 (¶¶ 10-11). Wise explained that because FE V is a supervisory position, eligible applicants must demonstrate at least one year of supervisory experience in a position where supervision is an essential job function. Id. at 4 (¶ 11); R. 85-16 at 25-26 (98:24-101:6). Because FE II is an entry-level position that does not supervise as an essential job function, Vassileva and the other FE II applicants failed to meet this requirement. Id. All of the applicants permitted to interview for the FE V position were FE IVs, which is a supervisory position. R. 85-15 at 3-4 (¶¶ 8, 13). One of those applicants, Jacek Wroblewski, was ultimately hired for the position. Id. at 5 (¶ 15).

**2019 FE IV Promotion**

On March 11, 2019, DWM posted openings for five FE III vacancies. R. 85-15 at 6 (¶ 21). Vassileva and six other candidates applied and interviewed for the position. Id. After the interviews, applicants visited Sharon Jackson, an Administrative Services Officer, to fill out paperwork. R. 107-1 at 73 (4:13-15), 77 (19:4-7). After meeting with Jackson, four of the applicants submitted "bid waivers," voluntarily dropping out of consideration for the FE III vacancies in order to remain eligible for other job opportunities. R. 85-21 at 1-4. That is because, pursuant to the relevant collective bargaining agreement, employees who receive a position may not bid for another position for six months afterward. R. 85-15 at 9 (¶ 25). The

remaining three applicants, including Vassileva, accepted the FE III position and began working as FE IIIs on July 1, 2019. R. 85-3 at 1.

On July 3, 2019, DWM posted an opening for six FE IV vacancies. R. 85-15 at 7 (¶ 19). Wise was again responsible for reviewing applications for this position. Id. Vassileva and the two other recently promoted FE IIIs applied for the position, but Wise deemed all three ineligible because they had accepted the FE III position fewer than six months prior. Id. at 7-9 (¶¶ 23, 24-25). Accordingly, Vassileva was not hired for the FE IV position.

**Acting Up/Overtime**

Eligible FEs are permitted to "act up," meaning that the employee performs the responsibilities of a higher-level FE position despite not holding the title. R. 85-8 at 3 (¶ 13). "Acting up is the exception, not the rule." R. 85-23 at 3. Such opportunities arise "when there is a budgeted Position that is either vacant or whose incumbent is absent; when an employee is in the process of being reclassified to a higher-graded, non-budgeted Position; or if a higher-graded position is needed temporarily due to seasonal work." Id. at 1. To be eligible to act up, the employee must submit an annual request and demonstrate that they have the present ability to perform the duties of the higher job title. Id.; R. 85-8 at 4 (¶ 16).

Eduardo Salinas, serving as Engineer of Water Purification, reviewed FE acting-up requests in February 2018 and determined which employees would be eligible to do so. R. 85-8 at 1, 4 (¶¶ 3, 17). Salinas determined that Vassileva (who was at that time still an FE II) and another FE II did not demonstrate eligibility to

act up in 2018. <u>Id.</u> at 4 (¶ 18). Because the February 2018 eligibility list was used until the next annual review, Vassileva did not act up as an FE III (and did not get accompanying overtime opportunities available to FE IIIs) during 2018. <u>Id.</u> at 4 (¶ 19); R. 85-11 at 5 (¶ 19). In December 2018, the eligibility list was reviewed for 2019 opportunities. R. 85-8 at 4-5 (¶¶ 21, 23). Vassileva was deemed eligible to act up at that review and began acting up as an FE III in January 2019. <u>Id.</u> at 5 (¶ 24); R. 85-11 at 5 (¶ 21), 32.

**Procedural History**

On June 11, 2018, Vassileva filed charges with the Illinois Department of Human Rights (IDHR); that filing also constituted filing the charges with the Equal Employment Opportunity Commission (EEOC). R. 85-29. Vassileva's administrative charges alleged discrimination based on age, sex, and national origin, as well as retaliation. R. 85-29 at 2. Vassileva received a right-to-sue letter on March 13, 2019. R. 10-1.

On June 17, 2019, Vassileva filed her complaint in this lawsuit. R. 1. She filed an amended complaint on October 15, 2019. R. 10. In her complaint, she alleged violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a) <u>et seq.</u>, and national-origin and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, for failing to promote her to FE V or FE IV and for denying her acting up and overtime opportunities, as well as retaliation for filing administrative charges in this case and for filing a prior lawsuit (<u>Vassileva v. City of Chicago</u>, No. 1:18-cv-4595 (N.D. Ill.) ("<u>Vassileva I</u>")). R.

10 at 6-8; Appx. 1 at 1. <u>Vassileva I</u> was filed on July 2, 2018 and alleged various

discrimination claims. Appx. 1 at 6. The February 2018 acting-up eligibility decision

that <u>Vassileva</u> raises in this case was also part of the litigation in <u>Vassileva I</u>. Appx.

1 at 8. <u>Vassileva I</u> settled in September 2023. <u>Vassileva I</u>, No. 1:18-cv-4595, Dkt.

162. The settlement agreement in <u>Vassileva I</u> contained the following release:

> In both lawsuits (*Vassileva* I (18 cv 4595) and *Vassileva* II (19 cv
> 4064)), Plaintiff has claims regarding not being allowed to "Act Up" as
> an FE III and denied overtime opportunities. These claims and all
> claims related to "acting up" or overtime that are set forth or could
> have been set forth in *Vassileva I* or *Vassileva II* are being released as
> part of this settlement. . . . Plaintiff understands she is waiving and
> releasing all claims regarding "acting-up" or overtime opportunities as
> set forth or could have been set forth in *Vassileva I* or *Vassileva II*, and
> that she will be barred from recovering any damages related to these
> claims from the City. . . .

<u>Vassileva v. City of Chicago</u>, No. 1:24-cv-00249, Dkt. 20-6 (N.D. Ill.).[1]

Meanwhile, in the present lawsuit, the City moved for summary judgment,

and on March 14, 2023, the district court granted the motion in all respects. Appx.

1. On Vassileva's discrimination claims, the court applied the burden-shifting

framework from <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Appx. 1 at

22. The court held that summary judgment was appropriate on the 2018 FE V

failure-to-promote claim because Vassileva was not qualified for the FE V position,

as she did not possess the requisite supervisory experience under the City's hiring

---

[1] This settlement agreement was filed in the district court as an exhibit to a motion
the City filed in a third lawsuit by Vassileva against the City. <u>Vassileva v. City of
Chicago</u>, No. 1:24-cv-00249 (N.D. Ill.) ("<u>Vassileva III</u>"). This court may take judicial
notice of the settlement agreement. <u>See</u> <u>Guaranty Bank v. Chubb Corp.</u>, 538 F.3d
587, 591 (7th Cir. 2008) ("[A] court is of course entitled to take judicial notice of
judicial proceedings."); <u>United States v. Doyle</u>, 121 F.3d 1078, 1088 (7th Cir. 1997)
(judicial notice of district-court docket).

rules; and she also could not demonstrate that the individual hired for the position, Wroblewski, who was older than Vassileva, had similar or lesser qualifications – he had spent 20 years working in a higher-level position than Vassileva, and was serving as an FE IV at the time of the promotion. Appx. 1 at 24-25. On the 2019 FE IV failure-to-promote claim, the court held that Vassileva failed to administratively exhaust her claims, as it was undisputed that she never filed an administrative charge relating to this promotion. Appx. 1 at 26. The district court then granted summary judgment on the acting-up and overtime claims based on the doctrine of claim splitting: because Vassileva's claims in this lawsuit were fully derivative of the February 2018 eligibility decision that was the subject of litigation in Vassileva I, she could not relitigate those claims in this case. Appx. 1 at 8-11, 27, 29. The court also rejected Vassileva's contention that the 2018 eligibility list should have been revised sooner than annually because she failed to identify any evidence to support that contention. Appx. 1 at 28.

Turning to Vassileva's retaliation claims, the district court granted summary judgment for the City because Vassileva could not show the necessary causal link between her protected activity (the filing of charges and the prior lawsuit) and the decisions she challenges. Appx. 1 at 31. In particular, the court explained that there was no evidence that the relevant decision-makers for each action knew about Vassileva's charges at the time they made the decisions. Appx. 1 at 31.

# SUMMARY OF ARGUMENT

The district court correctly granted summary judgment to the City on all of Vassileva's claims. First, Vassileva cannot demonstrate a genuine dispute of material fact as to any of the three discrimination claims she raises on appeal. Vassileva's 2018 FE V failure-to-promote claim fails because she did not present any evidence of discrimination; nor did she identify any similarly situated colleagues outside the protected classes who were treated better, or that she was qualified for the position. Her 2019 FE IV failure-to-promote claim is not properly before this court due to her failure to exhaust administrative remedies, and she has also waived any challenge to it on appeal; and, in any event, the claim would fail on the merits because she did not identify evidence of discrimination or of similarly situated colleagues treated better. Finally, Vassileva's acting-up and overtime claim fails on both procedural and substantive grounds: it is barred by the parties' settlement agreement in <u>Vassileva I</u> and by res judicata, and Vassileva has also waived any challenge to it; and it fails on the merits because there is no evidence of any discriminatory decision or of any other employee treated differently from Vassileva.

The district court correctly granted summary judgment on Vassileva's retaliation claims, too. These claims – which relate only to the two failures to promote – fail because the unrebutted evidence in the record establishes that the decision-makers had no knowledge of Vassileva's charges at the time of their decisions. Furthermore, as with her discrimination claims, the undisputed evidence

showed that Vassileva was not qualified for the FE V and FE IV positions, and she also failed to exhaust administrative remedies. Accordingly, summary judgment for the City was proper on all claims.

## ARGUMENT

———

Vassileva's discrimination and retaliation claims were both procedurally and substantively deficient. Among other problems, Vassileva failed to exhaust administrative remedies, attempts to relitigate settled claims, failed to adduce any evidence of discrimination or retaliation, and failed to demonstrate that she was even qualified for the positions to which she wanted to be promoted. Summary judgment was proper.

This court reviews a grant of summary judgment de novo. Allen-Noll v. Madison Area Technical College, 969 F.3d 343, 349 (7th Cir. 2020). "Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." Driveline Systems, LLC v. Arctic Cat, Inc., 936 F.3d 576, 579 (7th Cir. 2019) (quotation marks omitted); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists whenever there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Driveline Systems, 936 F.3d at 579 (quotation marks omitted). Although the movant must demonstrate the absence of a genuine dispute of material fact, "the non-moving party may not rest upon . . . conclusory statements in affidavits"; it must "support its contentions with proper documentary evidence." Beardsall v. CVS Pharmacy, Inc., 953 F.3d 969, 972 (7th Cir. 2020) (quotation

marks omitted); see Petts v. Rockledge Furniture LLC, 534 F.3d 715, 722-23 (7th Cir. 2008) ("Where the nonmoving party bears the burden of proof at trial . . . , she must present *specific facts* showing a genuine issue to survive summary judgment."). The district court's judgment should be affirmed.

## I. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON VASSILEVA'S DISCRIMINATION CLAIMS.

Vassileva alleged discrimination on the basis of age, sex, and national origin. Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[2] On summary judgment, the question for the court is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016).

The framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), provides "one way of culling the relevant evidence." Johnson v. Advocate Health &

---

[2] As the district court noted, Appx. 1 at 20, Vassileva's claims of age discrimination fall under the ADEA rather than under Title VII, which covers her sex and national-origin claims. "[T]he ADEA is narrower than Title VII" because the ADEA requires showing "that age was *the* but-for cause of the challenged adverse employment action." Skiba v. Illinois Central Railroad Co., 884 F.3d 708, 719 (7th Cir. 2018) (emphasis added; quotation marks omitted). Nonetheless, the two statutes "share similar analytical approaches." Igasaki v. Illinois Department of Financial & Professional Regulation, 988 F.3d 948, 960 (7th Cir. 2021); see Skiba, 884 F.3d at 719. We therefore address the Title VII and ADEA discrimination claims together.

Hospitals Corp., 892 F.3d 887, 894 (7th Cir. 2018). Under this framework, a plaintiff must prove "that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." David v. Board of Trustees of Community College District No. 508, 846 F.3d 216, 225 (7th Cir. 2017) (quotation marks omitted). "Summary judgment for the employer is appropriate if the employee fails to establish any of the elements of a *prima facie* case." Riley v. Elkhart Community Schools, 829 F.3d 886, 892 (7th Cir. 2016). If a plaintiff carries that initial burden, "the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." David, 846 F.3d at 225 (quotation marks omitted).

McDonnell Douglas "is just one way that a plaintiff can navigate her way to a jury in a discrimination case." Purtue v. Wisconsin Department of Corrections, 963 F.3d 598, 602 (7th Cir. 2020); see Vichio v. US Foods, Inc., 88 F.4th 687, 691 (7th Cir. 2023). A plaintiff may instead rely on "other direct or circumstantial evidence that supports an inference of intentional discrimination." Purtue, 963 F.3d at 602 (quotation marks omitted). Such evidence generally includes "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate

treatment." Id.

Vassileva does not say which framework she intends to apply to her claims, and the district court proceeded under <u>McDonnell Douglas</u>. Appx. 1 at 22. Nonetheless, as we explain below, Vassileva's claims fail under either approach because no reasonable jury could conclude that Vassileva experienced discrimination.

### A. Summary Judgment Was Proper On Vassileva's Claim Of Failure To Promote To FE V In 2018.

Vassileva claims she experienced discrimination when she was not permitted to interview for an FE V position in 2018. The district court concluded that Vassileva could not establish a prima facie case of discrimination, Appx. 1 at 23-25, and that conclusion was correct. Under both frameworks, this claim fails.

#### 1. **McDonnell Douglas** approach.

For failure-to-promote claims, a prima facie case requires the plaintiff to "produce evidence showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position." <u>Riley</u>, 829 F.3d at 892. Vassileva's claim fails because she cannot meet two elements of her prima facie case. First, there is no genuine dispute that Vassileva failed to show that the City "promoted someone outside of the protected class who was not better qualified for the position." <u>Id.</u> Wroblewski – the employee promoted to the FE V position – was significantly more qualified for the position. R. 85-15 at 99. At the time he applied, he was serving as an FE IV, two

ranks higher than Vassileva's FE II position. R. 85-15 at 100. Indeed, Wroblewski had worked as an FE IV since 2015 and as an FE III for 17 years before that – at all times at a higher rank than Vassileva. Id. It is undisputed that FE V is the highest supervisory FE position, which requires supervisory experience, and that FE IV is also a supervisory position, while FE II is an entry-level position and does not entail supervisory responsibilities. R. 85-8 at 3 (¶¶ 8-11); R. 85-15 at 2-4 (¶¶ 5, 8, 11). Accordingly, Wroblewski, an employee already serving as a supervisor at the FE IV level and seeking to move up *one* level to another supervisory role, was inarguably more qualified than Vassileva, who was serving in an entry-level position and seeking to move up *three* levels to the highest supervisory position. In fact, every employee permitted to interview for the FE V position was more qualified than Vassileva; all three were at that time serving as FE IVs. R. 85-15 at 3 (¶ 8). Likewise, none of the three FE IIs who applied for the FE V position, including Vassileva, were permitted to interview. R. 85-15 at 3-4 (¶¶ 10, 13), 124. Moreover, Wroblewski was older than Vassileva, R. 85-17 at 2 (¶ 7), which further belies any claim of discrimination based on age.

Vassileva acknowledges all of these facts. Vassileva Br. 22. Her sole response is that two other employees were later hired after a subsequent posting of another FE V position, and one of them had started at DWM two weeks after Vassileva. Id. She does not explain how that makes any difference where the FE V position requires an applicant to have previously held a supervisory position. And again, unlike Vassileva, both of those employees were working as FE IVs at the time of

their applications. R. 85-15 at 3 (¶ 8); R. 85-18 at 9-10 (¶ 13).

Second, Vassileva also failed to establish a genuine issue of material fact on the element of a prima facie case that she was "qualified for the position sought." Riley, 829 F.3d at 892. Wise, the recruiter for the FE V position, explained that FE V, the highest FE rank, is a supervisory position and accordingly requires at least one year of supervisory experience in a position where supervision is an "essential job function." R. 85-15 at 2 (¶ 5), 4 (¶ 11). And it is undisputed that FE II – an entry-level position – does not include supervision as an essential job function. R. 85-8 at 3 (¶¶ 9-11); R. 85-15 at 4 (¶ 11). Therefore, Vassileva, as an FE II, was not qualified for the position and was denied permission to interview on that basis – as was another FE II who applied. R. 85-15 at 4 (¶ 11); R. 85-16 at 25 (98:9-22).

In response, Vassileva argues that the position description for FE V does not specify that the supervisory experience must be in a position where supervision is an essential job function. Vassileva Br. 12. According to her, the fact that she informally supervised as an FE II and while acting up as an FE III is sufficient to meet the supervision requirement. Vassileva Br. 13-15. But written departmental policy provides that "[e]xperience gained while Acting Up shall not be counted when considering whether an employee meets the minimum qualifications for a permanent Position." R. 85-23 at 3; see R. 85-16 at 26 (101:20-24). And Wise explained without rebuttal that departmental rules required the completion of supervisory experience in a position where supervision is an essential job function. R. 85-15 at 4 (¶ 11); R. 85-16 at 25-26 (98:24-101:6). "'[E]mployers are entitled to

13

define the core qualifications for a position.'" Rodrigo v. Carle Foundation Hospital, 879 F.3d 236, 242 (7th Cir. 2018) (quoting Leisen v. City of Shelbyville, 153 F.3d 805, 808 (7th Cir. 1998)).

Vassileva also observes that she was permitted to interview for an identical FE V position in 2016, even though she was an FE II at that time as well. Vassileva Br. 11, 18.[3] According to her, the fact that Wise did not deem her unqualified for the FE V position in 2016 means that she must automatically be considered qualified for that position in 2018. But that is not a reasonable inference. To be sure, Wise permitted both Vassileva and another FE II to interview for an FE V position in 2016, though neither was hired. R. 85-12 at 15 (57:18-58:12, 60:22-61:2); R. 107 at 15 (¶ 18). But Wise candidly explained that this was a mistake on his part, and the FE IIs should not have been permitted to interview even in 2016, R. 85-16 at 25 (99:8-100:18); and there is no contrary evidence. That Wise incorrectly interviewed unqualified candidates in 2016 does not mean he was required to do so in 2018. Moreover, regardless of what happened in 2016, Vassileva was inarguably not qualified for the FE V position that was available in 2018.

Vassileva then points to Alan Stark's testimony to argue that "there was no

---

[3] Vassileva frames her argument on this point primarily in terms of pretext, which is distinct from the question of whether she was qualified for the position and does not come into play unless the plaintiff has already established a prima facie case. See Collins v. American Red Cross, 715 F.3d 994, 1000 (7th Cir. 2013). Because Vassileva has not established a prima facie case, we address her arguments about pretext in the context of the direct and circumstantial evidence approach, which asks, among other things, whether the employer's justification was "dishonest." Purtue, 963 F.3d at 602.

prohibition against an FE II applying for an FE V position if the qualifications of the job position were met." Vassileva Br. 19. This does not help Vassileva. She was not prohibited from *applying* for the FE V position; she was found not to meet "the qualifications of the job position." There may be FE II applicants who do meet the qualifications – for instance, if they previously served as a supervisor under a different employer. See R. 85-16 at 26 (102:7-15). Vassileva did not.

Similarly, Vassileva asserts that "John Ellis, an FE II at the time, was not only permitted to interview for the FE V position in 2016, he was actually given the position." Vassileva Br. 20. But this statement is false. As Vassileva's own citation demonstrates, neither Ellis nor any other FE II was promoted to FE V in 2016. Rather, Harold Keaton, an FE IV, was promoted to FE V. Dkt. 107 at ¶¶ 14, 18. Vassileva also notes that, in 2015, two FE IIs were promoted to FE IV. Vassileva Br. 20. But a promotion to FE IV is not relevant to whether Vassileva was qualified for the promotion to FE V.

Because Vassileva cannot establish that she was qualified for the FE V position, she fails to make out a prima facie case under the McDonnell Douglas framework for this reason as well.

2.    **Direct or circumstantial evidence approach.**

Vassileva likewise does not present direct or circumstantial evidence from which a reasonable jury could infer discrimination. This approach generally looks at "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications

for disparate treatment." <u>Purtue</u>, 963 F.3d at 602 (quotation marks omitted). None of this is present here.

Vassileva identifies a litany of comments and conduct she considers discriminatory. Vassileva Br. 23-25. But this court has consistently explained that such remarks raise an inference of discrimination only when they are "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." <u>Petts v. Rockledge Furniture LLC</u>, 534 F.3d 715, 721 (7th Cir. 2008) (quotation marks omitted). It is undisputed that Wise was the decision-maker with regard to the FE V promotion, and Vassileva does not attribute any of the alleged comments to him. That alone dooms her claim. <u>See</u> <u>Mach v. Will County Sheriff</u>, 580 F.3d 495, 499 (7th Cir. 2009) ("We need not move past the first factor – that Horwath was not the decision-maker dooms Mach's claim."). Furthermore, Vassileva does not indicate when those alleged comments by various supervisors were made, nor are any of them in reference to the FE V promotion, and without either of those things the comments are not evidence of discrimination. Vassileva Br. 23-24; <u>Petts</u>, 534 F.3d at 721.[4]

Nor is there evidence that similarly situated employees outside the protected classes were treated better. Similarly situated employees must be "directly comparable to [the plaintiff] in all material respects." <u>Williams v. Office of Chief Judge</u>, 839 F.3d 617, 626 (7th Cir. 2016) (quotation marks omitted). As we have

---

[4] Vassileva cites <u>Hasham v. California State Board of Equalization</u>, 200 F.3d 1035 (7th Cir. 2000), but that case involved an extensive "pattern of falsehoods, contradictions and discriminatory statements" made by the decision-maker himself. <u>Id.</u> at 1050. That is not the case here.

explained, two other FE IIs besides Vassileva applied for the FE V position, and neither was permitted to interview. R. 85-15 at 3-4 (¶¶ 10-12). Both of those applicants were younger than her, one of them was male, and, according to Vassileva, neither was Bulgarian. R. 85-2 at 6 (24:7-11); R. 85-17 at 2 (¶¶ 7-8); R. 101-1 at 14 (¶ 25). And Vassileva does not even attempt to identify any similarly situated colleagues who were treated better with respect to the FE V promotion, nor can she; all the employees granted an interview for the position were FE IVs (two ranks above Vassileva), and thus not similarly situated to Vassileva. See Hudson v. Chicago Transit Authority, 375 F.3d 552, 561 (7th Cir. 2004) (employees of a "higher rank than the Plaintiff's position at the time they were promoted" are not similarly situated). In addition, they were all older than Vassileva, R. 85-17 at 2 (¶¶ 7-8), yet were also interviewed.

Finally, there is no evidence of dishonesty or pretext in the City's explanations. "Pretext means a lie, specifically a phony reason." Collins, 715 F.3d at 1000. To avoid summary judgment, Vassileva "must do more than simply allege that the [employer is] lying about their real reason" for the decision; instead, she "must point to specific facts sufficient to cast doubt" on the justification. Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 578 (7th Cir. 2003); see Skiba v. Illinois Central Railroad Co., 884 F.3d 708, 724 (7th Cir. 2018) (plaintiff "must identify such weaknesses, implausibilities, inconsistencies, or contradictions" in the asserted reasons "that a reasonable person could find them unworthy of credence" (quotation marks and punctuation omitted)).

There is no evidence of pretext. Wise's explanation for finding Vassileva ineligible for the FE V position was inarguable: the position requires supervisory experience, and Vassileva did not have it. R. 85-15 at 4 (¶ 11). To be sure, Vassileva disagrees that she lacks supervisory experience; but "the question . . . is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason[]." Collins, 715 F.3d at 1000. There is no evidence that Wise did not honestly believe this.

Vassileva argues that this reason must have been pretextual because Wise previously allowed her to interview in 2016, but as we explain above, Wise testified that the prior decision was simply an error, R. 85-16 at 25 (99:8-100:18), and there is no contrary evidence. She also relies on Stark's 'admission' that there is no categorical prohibition on FE IIs applying for an FE V position and her assertion that an FE II was promoted to FE V in 2016; but again, as we have explained, the latter statement is false, and the former is fully consistent with Wise's explanation, and, indeed, Vassileva was permitted to apply. R. 85-16 at 26 (102:7-15). Vassileva then asserts that there was "a shift in Defendant's explanations." Vassileva Br. 18 (citing Zaccagnini v. Charles Levy Circulating Co., 338 F.3d 672 (7th Cir. 2003)). "But the explanations must actually be shifting and inconsistent to permit an inference of mendacity." Schuster, 327 F.3d at 577. Here, there has only ever been one explanation: Vassileva – and the other FE II applicants – did not possess the requisite supervisory qualifications. That explanation has never shifted or changed, so Vassileva's reliance on Zaccagnini is misplaced. See Zaccagnini, 338 F.3d at 676-

78 (defendant set forth different rationales in summary judgment motion and reply, and evidence called both rationales into question). Finally, Vassileva points to her own testimony that she was denied a promotion to FE IV in 2007; that in 2015, others were promoted from FE II and FE III to FE IV; and that the City did not fill FE III vacancies for four years until 2019, at which point she was, in fact, promoted to FE III. Vassileva Br. 24-25. None of these past events, even assuming they could be considered here, suggests that Wise's reason for not permitting Vassileva to interview for FE V in 2018 was dishonest.

Ultimately, Vassileva presents no evidence that Wise's justification – that departmental policy requires supervisory experience as an essential job function for the FE V position, a policy he applied across the board to all applicants – was dishonest or implausible. Summary judgment was appropriate.

### B. Summary Judgment Was Proper On Vassileva's Claim Of Failure To Promote To FE IV In 2019.

Vassileva also claimed discrimination in connection with DWM's failure to promote her to FE IV in 2019. The district court correctly granted summary judgment to the City on this claim.

As an initial matter, this claim may be rejected for multiple procedural reasons. First, Vassileva has waived her challenge to the grant of summary judgment on this claim. The 2019 FE IV claim appears in one of her headings, Vassileva Br. 25, but she develops no argument about it. Failing to develop an argument on appeal constitutes waiver. Greenbank v. Great American Assurance Co., 47 F.4th 618, 629 (7th Cir. 2022). And in particular, Vassileva fails to challenge

the basis of the district court's holding, which is "fatal" to her claim of error. <u>Griffin v. Bell</u>, 694 F.3d 817, 826 (7th Cir. 2012); <u>see</u> <u>Hackett v. City of South Bend</u>, 956 F.3d 504, 509-10 (7th Cir. 2020) (failure to address rulings and reasoning of district court forfeits any argument that those rulings were wrong). The district court granted summary judgment to the City on the basis that Vassileva failed to exhaust her administrative remedies on this claim. Appx. 1 at 26-27. Vassileva does not substantively address this holding on appeal; she merely includes one sentence in which she notes that her 2018 IDHR charge could not have included her 2019 failure-to-promote claim, which does not refute that she needed to exhaust her 2019 failure-to-promote claim. Vassileva Br. 27.

In addition, the district court's ruling may be affirmed on the ground that it is correct. "[A] plaintiff can only bring claims under Title VII or the IHRA that he has included in the original charge filed with the Equal Employment Opportunity Commission ('EEOC') or the IDHR." <u>Cervantes v. Ardagh Group</u>, 914 F.3d 560, 564 (7th Cir. 2019). A failure to promote is a "discrete discriminatory act" that requires the filing of new administrative charges. <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002).

It is undisputed that Vassileva did not file any administrative charges regarding the 2019 failure to promote. Vassileva's failure to exhaust the 2019 failure-to-promote claim mandates summary judgment for the City. <u>See</u> <u>Cervantes</u>, 914 F.3d at 566 (summary judgment proper where plaintiff's failure-to-promote claims "were not within the scope of his retaliation charge"). Accordingly, for all of

these reasons, this court need not reach the merits of the 2019 failure-to-promote claim in order to affirm the decision of the district court.

Nonetheless, we note that Vassileva's claim fails on the merits, too. Under McDonnell Douglas, she cannot show that she was qualified for the 2019 FE IV position. It is undisputed that Vassileva's collective bargaining agreement prohibits employees from being promoted within six months of accepting a different promotion. R. 85-15 at 9 (¶ 25). It is also undisputed that Vassileva accepted a promotion to FE III on July 1, 2019, fewer than six months before applying for the FE IV promotion between July 3 and 17, 2019. R. 85-3 at 1; R. 85-15 at 7 (¶¶ 19-23). For that reason – which Vassileva does not address – she and the other recently promoted candidates were rejected as unqualified for the FE IV position. R. 85-15 at 8-9 (¶ 24).

Consistent with this, none of the employees who were promoted to FE IV had previously accepted a position within six months, so none was subject to the same disqualification that Vassileva and the other two recently promoted FE IIIs were subject to. R. 85-15 at 9 (¶¶ 26-27). Nor can Vassileva show that any similarly situated employees were treated better. Again, the six-month rule was applied across the board; the two other recently promoted FE IIIs (both of whom were non-Bulgarian and male, and one of whom was younger, R. 85-17 at 2 (¶¶ 7-8)), were rejected from the FE IV position on that basis. R. 85-15 at 8-9 (¶¶ 24-25). And in addition, the six promoted employees included female and older employees. R. 85-17 at 2 (¶¶ 7-8).

Vassileva suggests that Sharon Jackson, the Administrative Services Officer for the FE IV position, told some employees about the upcoming FE IV position and not others, causing those employees to withdraw their bids for the FE III position. Vassileva Br. 26-27. But there is no evidence of discrimination here. Jackson's unrebutted testimony is that she mentioned the upcoming position to every employee who asked about it, and Vassileva did not ask. R. 107-1 at 77-78 (19:15-24:11). Vassileva's statement that Jackson "inform[ed] her similarly situated colleagues" about the upcoming position, but not Vassileva, cannot defeat summary judgment.

Under the direct and circumstantial evidence approach, too, Vassileva's claim would fail. As with the 2018 failure-to-promote claim, none of the discriminatory comments she complains of were made by Wise or Jackson or have anything to do with the 2019 FE IV promotion, so they fail to support her claim. See Petts, 534 F.3d at 721. And as we explain above, Vassileva has not identified similarly situated employees who were treated better. Finally, Vassileva does not even attempt to explain how either the six-month application restriction or Jackson's explanation that she told employees of upcoming positions based on their own inquiries were dishonest or pretextual. Simply put, there is no evidence from which a jury could find discrimination.

### C. Summary Judgment Was Proper On Vassileva's Claim Of Denial Of Acting Up And Overtime Opportunities.

Vassileva next alleges discrimination when she was denied the opportunity to "act up" as an FE III, including the accompanying overtime opportunities, from

March 2018 to January 2019. The district court granted summary judgment for the City because these claims were barred by claim splitting and because Vassileva was treated no differently than anyone else. Appx. 1 at 10, 27-28. That ruling was correct.

As with her 2019 failure-to-promote claim, Vassileva's acting-up claim stumbles out of the gate for multiple procedural reasons. To start, these claims are barred by the settlement agreement in <u>Vassileva I</u>. That agreement provides:

> In both lawsuits (*Vassileva* I (18 cv 4595) and *Vassileva* II (19 cv 4064)), Plaintiff has claims regarding not being allowed to "Act Up" as an FE III and denied overtime opportunities. These claims and all claims related to "acting up" or overtime that are set forth or could have been set forth in *Vassileva I* or *Vassileva II* are being released as part of this settlement. . . . Plaintiff understands she is waiving and releasing all claims regarding "acting-up" or overtime opportunities as set forth or could have been set forth in *Vassileva I* or *Vassileva II*, and that she will be barred from recovering any damages related to these claims from the City. . . .

<u>Vassileva III</u>, Dkt. 20-6 at 4 (¶ 8).

This release explicitly covers the acting-up and overtime claims that are in this case and releases the City from liability for them. Vassileva acknowledges the settlement in her brief, Vassileva Br. 6 n.1, but omits any mention of the release and does not argue that her claims fall outside the scope of the agreement. This court routinely enforces similar settlement language and should do so here. <u>See</u> <u>Enigwe v. Amazon.com Services LLC</u>, No. 23-2431, 2024 WL 1342576, *2 (7th Cir. Mar. 29, 2024) (holding that "the release in the settlement agreement bars [plaintiff's] claim" because the "text is not ambiguous"); <u>Platinum Supplemental Insurance, Inc. v. Guarantee Trust Life Insurance Co.</u>, 989 F.3d 556, 564 (7th Cir.

2021) (if the claims fall within the scope of the settlement agreement, "then the language of the [agreement] would unquestionably bar [plaintiff] from bringing those claims now").

Beyond that, Vassileva has also forfeited any challenge to the district court's grant of summary judgment on this claim by failing to challenge the basis of the court's decision, namely, that the acting-up claim was barred by the doctrine of claim splitting. Appx. 1 at 10; see Hackett, 956 F.3d at 509-10. Her brief purports to challenge the court's failure to consider her acting-up claims, Vassileva Br. 27-30, but never addresses claim splitting at all. The court may affirm summary judgment on this claim on the basis of that forfeiture alone.

Finally, Vassileva's acting-up claim fails because it is barred by res judicata.[5] Res judicata "bars claims that were litigated or could have been litigated in a previous proceeding when three elements are met: (1) identity of the parties or their privies between the two actions; (2) a final judgment on the merits in an earlier proceeding; and (3) identity of the causes of action." Arrigo v. Link, 836 F.3d 787, 798-99 (7th Cir. 2016). All three elements are present here.

First, this case and Vassileva's first lawsuit share the same parties. Vassileva I, No. 1:18-cv-04595 (N.D. Ill.). Second, the district court in Vassileva I dismissed her case with prejudice pursuant to the parties' settlement agreement. Id., Dkt. 162.

---

[5] At the time of the district court's decision, Vassileva I had not yet been resolved; for that reason, the court applied the doctrine of claim splitting, which involves the same elements as res judicata but does not require a final judgment on the merits. Cooper v. Retrieval-Masters Creditors Bureau, Inc., 42 F.4th 688, 696 (7th Cir. 2022). Because the application of res judicata would necessarily satisfy the requirements of claim splitting, we will address only res judicata here.

That dismissal satisfies the second element of res judicata. See Kilburn-Winnie v. Town of Fortville, 891 F.3d 330, 334 (7th Cir. 2018) ("[D]ismissal with prejudice based on a settlement agreement is a final judgment for purposes of *res judicata*." (citing Brooks-Ngwenya v. Indianapolis Public Schools, 564 F.3d 804, 809 (7th Cir. 2009))). Finally, there is an identity of causes of action. The "test for an identity of the causes of action is whether the claims arise out of the same set of operative facts or the same transaction." Id. at 333 (quotation marks omitted). Vassileva claims in this case that she was wrongfully denied acting-up opportunities between March 2018 and January 2019. Vassileva Br. 27. But the only reason Vassileva was not permitted to act up is because DWM determined that she was ineligible to act up in February 2018 – a decision Vassileva litigated in Vassileva I, and which she admits is not part of this lawsuit. Vassileva Br. 27. Because her acting-up claims in this case arise out of the same transaction as her acting-up claims in Vassileva I, the third element of res judicata is met. See Palka v. City of Chicago, 662 F.3d 428, 437 (7th Cir. 2011) ("[T]here is an identity of the causes of action because the Title VII claims are premised on . . . the same transactions at issue in their § 1983 cases."); see also Scholz v. United States, 18 F.4th 941, 952 (7th Cir. 2021) (plaintiff's "attempt to now bring claims resting on the same conduct in *Scholz II* is a quintessential example of . . . a litigation tactic that res judicata doctrine is meant to prevent" (quotation marks omitted)). Accordingly, her acting-up claims are barred.

Even if this court were to reach the merits, Vassileva would fare no better.

She concedes that she cannot challenge the February 2018 eligibility decision itself, which is the basis of her claims and outside the scope of this litigation. Vassileva Br. 27. To the extent her claim is instead that DWM should have decided to conduct an early revision of the eligibility list after Vassileva completed her training in July 2018, Vassileva Br. 28, she points to no evidence – and there is none – that the City conducts mid-year eligibility revisions or that any law requires it to do so. The unrebutted testimony from Salinas and Yadi Babapour, Vassileva's immediate supervisor, was that the eligibility list was made at the beginning of each year (February 2018 and January 2019). R. 85-8 at 4-5 (¶¶ 17, 21-24); R. 85-11 at 1 (¶ 3), 4 (¶ 14). This was applied across the board; the record identifies no employee who received a mid-year eligibility reevaluation, so Vassileva cannot point to any similarly situated employee who was treated better.[6] For these reasons, Vassileva's criticism that the City provided no explanation for not revising the eligibility list sooner falls flat. There is nothing to explain. Vassileva's acting-up claim fails.

So too does her related overtime claim. As the district court pointed out, her overtime claim is purely derivative of her acting-up claim: the only overtime hours she was denied were those that would have been available if she were acting up. Appx. 1 at 29; R. 85-11 at 5 (¶ 19). For that reason, the overtime claim fails for all the same reasons as the acting-up claim (indeed, the settlement agreement deals

---

[6] Vassileva briefly argues that similarly situated employees were allowed to act up while she was not. Vassileva Br. 29. But she does not argue that any other employee was reevaluated; rather, her statement simply reflects her disagreement with the February 2018 decision finding her ineligible, which, again, she admits is not subject to this lawsuit. Id. at 27.

with them as one unit, see Vassileva III, Dkt. 20-6 at 4 (¶ 8)). Vassileva does not

challenge this point; she mentions overtime in her heading for the acting-up claim,

but she does not independently address it, thus waiving any independent

arguments about overtime. See Greenbank, 47 F.4th at 629.[7]

## II. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON VASSILEVA'S RETALIATION CLAIMS.

Vassileva also brought retaliation claims in connection with the 2018 FE V

and 2019 FE IV failures to promote, alleging that the City took those actions in

retaliation for Vassileva's filing of administrative charges. R. 10 at 6; Vassileva Br.

31. The district court correctly granted summary judgment for the City on these

claims as well. Appx. 1 at 30-32.

"Title VII prohibits employers from discriminating against an employee

'because he has opposed any practice made an unlawful employment practice by

this subchapter, or because he has made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or hearing.'" Igasaki, 988 F.3d at 959

(quoting 42 U.S.C. § 2000e-3(a)). A plaintiff must show that "the desire to retaliate

was *the* but-for cause of the challenged employment action," which means that "the

---

[7] Vassileva also raised a claim relating to a written reprimand she received in June 2018. R. 10 at 7 (¶ 30); R. 85-8 at 6-7 (¶ 35). The reprimand related to a February 2018 training session in which Vassileva refused to leave despite being instructed to do so by supervisors. R. 85-8 at 5-6 (¶¶ 28-31). The district court granted summary judgment to the City on that claim. Appx. 1 at 29. Vassileva essentially abandons the reprimand claim on appeal, making no argument that the district court erred and stating in only a single sentence that the reprimand was "completely unjustified" and "may . . . be" evidence of "state of mind" and "pretext." Vassileva Br. 30. This undeveloped argument fails to preserve a challenge to summary judgment on the reprimand claim. Any argument in support of that claim is waived.

adverse action would not have happened without the [protected] activity." <u>Mollet v. City of Greenfield</u>, 926 F.3d 894, 897 (7th Cir. 2019) (quotation marks omitted).

"As with discrimination claims, the question for a retaliation claim should always be: 'Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?'" <u>Igasaki</u>, 988 F.3d at 959. And as with discrimination claims, a plaintiff may either "take a 'direct' approach and show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between the protected activity and the adverse action," or "take an 'indirect' approach, by which he must show that (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than similarly-situated employees who did not engage in protected activity." <u>Madlock v. WEC Energy Group, Inc.</u>, 885 F.3d 465, 472 (7th Cir. 2018) (quotation marks omitted). Under either approach, Vassileva cannot prevail.

### A. Summary Judgment Was Proper On Vassileva's Claim That The Failure To Promote Her To FE V In 2018 Was Retaliatory.

There is no genuine dispute of material fact regarding Vassileva's claim that she was not permitted to interview for FE V in 2018 in retaliation for her protected activity. Under the indirect approach, Vassileva fails at the outset because she does not identify any similarly situated comparators. As we explain above, all of the employees permitted to interview for the FE V position were two ranks higher than

Vassileva and therefore not similarly situated. <u>Hudson</u>, 375 F.3d at 561. Likewise, all the other FE IIs who applied for the position – and who did not file charges – were rejected for the same reason as Vassileva. Without showing that "similarly-situated employees who did not engage in protected activity" were treated better, Vassileva fails to make out a prima facie case of retaliation. <u>Madlock</u>, 885 F.3d at 472. And as we also explain above, Vassileva independently fails to make out a prima facie case because she was not qualified for the FE V position.

Under the direct approach, Vassileva fails to show that "there was a causal link between the protected activity and the adverse action." <u>Madlock</u>, 885 F.3d at 472. In particular, "[a]s a threshold matter, the plaintiff must show that the defendant was aware of the protected conduct." <u>Khungar v. Access Community Health Network</u>, 985 F.3d 565, 578 (7th Cir. 2021). Thus, if the decision-maker did not know of the protected conduct, the claim fails as a matter of law. <u>See</u> <u>id.</u> (rejecting retaliation claim where "the undisputed evidence shows that [the decision-maker] did not know about [plaintiff's] EEOC charge" when the adverse decision was made); <u>Cervantes</u>, 914 F.3d at 567 (plaintiff cannot prevail on retaliation claim where "she failed to 'show[] that whoever was responsible for' her reassignments and denials of overtime 'was aware of her protected activity'" (quoting <u>King v. Ford Motor Co.</u>, 872 F.3d 833, 842 (7th Cir. 2017))).

Here, Wise, who was the decision-maker, explained that he had no knowledge of Vassileva's charges at the time of the FE V interview decision. R. 85-15 at 10 (¶ 30). That statement is unrebutted and dooms Vassileva's claim. Vassileva

acknowledges Wise's statement, Vassileva Br. 18, 21, but speculates that "a reasonable jury could very well conclude otherwise," id. at 18, because Wise worked in the City's human resources department, the City was the respondent, and Wise was involved in the hiring process, id. at 21. But a non-movant "must present *specific facts* showing a genuine issue to survive summary judgment." Petts, 534 F.3d at 722-23. Vassileva's speculation that Wise may have lied about not knowing of her charges is insufficient to defeat summary judgment. See Igasaki, 988 F.3d at 958 ("Other than attacking Forester's veracity, which is a conclusory allegation that does not defeat summary judgment, Igasaki has not offered any evidence of dishonesty."); Skiba, 884 F.3d at 721 ("[O]ur favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." (quotation marks and punctuation omitted)).

Vassileva also appears to argue that the timing of the decision not to let her interview was suspicious. Vassileva Br. 18-19. There are numerous problems with this argument. At the outset, because the decision-maker was not aware of her charges, it would not even matter if the timing were suspicious. See Khungar, 985 F.3d at 578 (even where suspicious timing is present, plaintiff must show decision-maker was aware of protected activity). In addition, the timing was not suspicious at all. Vassileva asserts that the decision not to permit her to interview for the FE V position was made only a month after her second IDHR complaint was *dismissed*. Vassileva Br. 18-19. But the protected activity was not the dismissal of her administrative complaint; that is an act of the agency, not Vassileva. The protected

activity was Vassileva's filing of administrative charges, and that occurred in February and March 2017, more than a year before the decision not to permit her to interview for the FE V position. Vassileva Br. 18. "[S]uspicious timing is rarely enough to create a triable issue . . . . So for an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action." Igasaki, 988 F.3d at 959. Vassileva plainly failed to demonstrate any triable issue of fact here.

**B. Summary Judgment Was Proper On Vassileva's Claim That The Failure To Promote Her To FE IV In 2019 Was Retaliatory.**

Vassileva's claim that DWM failed to promote her to FE IV in 2019 in retaliation for filing administrative charges is equally flawed. First, Vassileva has waived any challenge to the district court's decision by failing to address it on appeal; the section of her brief dealing with the 2019 FE IV failure-to-promote claim, Vassileva Br. 25-27, does not even mention retaliation, and the retaliation section of her brief, id. at 30-32, mentions the claim in only one sentence without citation. Undeveloped arguments are waived. See Greenbank, 47 F.4th at 629. And in particular, Vassileva does not challenge the basis for the district court's decision on this retaliation claim, which was that she failed to exhaust administrative remedies. Failure to challenge the grounds for decision forfeits the ability to challenge the decision on appeal. See Hackett, 956 F.3d at 509-10. And finally, it is undisputed that Vassileva never exhausted this claim by filing administrative

charges, which entirely precludes the claim. See <u>Morgan</u>, 536 U.S. at 114;

<u>Cervantes</u>, 914 F.3d at 564-66.

In any event, the 2019 FE IV failure-to-promote retaliation claim would fail

on the merits because there is no evidence that Jackson, the decision-maker, knew

about Vassileva's IDHR charges when processing applications. Again, lack of

knowledge by the decision-maker defeats a retaliation claim. See <u>Khungar</u>, 985 F.3d

at 578.

Finally, in one conclusory sentence at the end of her brief, Vassileva argues

that "[a]ll of the other factors discussed" in her discrimination sections apply

equally to her retaliation claims. Vassileva Br. 32. That statement makes no sense;

whether (1) the City's decisions were motivated by discrimination (due to age, sex,

or national origin), and (2) whether the City's decisions were motivated by

retaliation for filing charges, are different questions involving different evidence.

Vassileva does not explain her statement or specify what "factors" she is referring

to. This argument is therefore waived. See <u>Greenbank</u>, 47 F.4th at 629.

## CONCLUSION

———

For the foregoing reasons, the district court's grant of summary judgment in

favor of the City should be affirmed.

Respectfully submitted,

MARY B. RICHARDSON-LOWRY

Corporation Counsel
  of the City of Chicago

s/ Daniel E. Alperstein
BY:   DANIEL E. ALPERSTEIN
Assistant Corporation Counsel
2 N. LaSalle Street, Suite 580
Chicago, Illinois 60602
(312) 742-4961
daniel.alperstein@cityofchicago.org

## CERTIFICATE OF COMPLIANCE

————

In accordance with Fed. R. App. P. 32(g)(1), I certify that the foregoing brief complies with the type-volume limitation provided by Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32(c). This brief contains 9,075 words, beginning with the words "Jurisdictional Statement" and ending with the words "Respectfully submitted" in the Conclusion section, as recorded by the word count of the Microsoft Word word processing system used to prepare the brief.

s/ Daniel E. Alperstein
DANIEL E. ALPERSTEIN, Attorney

## CERTIFICATE OF FILING/SERVICE

————

I certify that on May 8, 2024, I electronically filed the attached Brief of Defendant-Appellee with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

s/ Daniel E. Alperstein
DANIEL E. ALPERSTEIN, Attorney